Exhibit 1 to Complaint
(Part 4 of 4)

Docket No. CP98-150-006, et al.                                           - 104 -

(U)  Empire's section 284.224 blanket certificate is terminated on the in-service date of the proposed connector facilities.

(V)  The requests for rehearing and clarification of the preliminary determination issued to EPI are granted and denied, as indicated in the body of the order.

(W)  EPI shall file any renegotiated contract containing non-conforming provisions and negotiated rate contract(s) or numbered tariff sheets at least 90 days prior to the commencement of service.

(X)  EPI shall file actual tariff sheets at least 90 days before the in-service date of its facilities that reflect compliance with NAESB standards in effect at that time and the modifications discussed in this order.

(Y)  The certificates issued in Ordering Paragraphs (A), (F), (J), and (R) are conditioned on Millennium's, Algonquin's, Iroquois', and EPI's compliance, respectively, with all of the applicable regulations under the NGA, particularly the general terms and conditions set forth in Parts 154, 157, and 284, and paragraphs (a), (c), (d), (e), and (f) of section 157.20.

(Z) Millennium, Algonquin, Iroquois, and EPI shall file executed firm transportation contracts with their shippers prior to construction of any authorized facilities.

(AA)  Algonquin and Iroquois shall file their negotiated rate contract(s) or numbered tariff sheets as described in the body of this order at least 60 days prior to the commencement of service on their proposed facilities. Millennium and EPI shall file not less than 90 days prior to the commencement of service.

(BB)  Millennium and EPI shall make filings within three years after their in-service date justifying their existing recourse rates or proposing alternative rates, as discussed in the body of this order for Millennium and in the preliminary determination for EPI.

(CC)  Millennium, Algonquin, Iroquois, and EPI shall maintain separate books, accounts, and records for transportation provided under their negotiated rates and for transportation provided under their recourse rates. Algonquin shall maintain separate books and records for its incremental service.

Docket No. CP98-150-006, et al.                                                    - 105 -

(DD)  Millennium's, Algonquin's, Iroquois', and EPI's facilities shall be constructed and made available for service within three years of the date of the order in this proceeding.

(EE)  The certificates issued herein are conditioned on Millennium's, EPI's, Algonquin's, and Iroquois' compliance with the environmental conditions set forth in Appendix C to this order.

(FF)  Millennium, Algonquin, Iroquois, and EPI shall notify the Commission's environmental staff by telephone or facsimile of any environmental noncompliance identified by other federal, state, or local agencies on the same day that such agency notifies the applicants herein.  Millennium, Algonquin, Iroquois, and EPI shall file written confirmation of such notification with the Secretary within 24 hours.

(GG)  The untimely motions to intervene by the parties listed in Appendix B are granted.

(HH)  Baltimore Gas' request for a technical conference in Docket No. CP05-19-000 is denied.

(II)  Consolidated Edison's and Orange and Rockland's request for a consolidated technical conference in Docket Nos. RP06-231-002, RP06-365-000, and the NE-07 project is denied.

(JJ)  In all other respects, the Interim Order, the 2002 *Millennium* Order and the *Iroquois* Order shall remain in full force and effect.

By the Commission.

( S E A L )


                              Magalie R. Salas,
                                 Secretary.

Docket No. CP98-150-006, et al.                                    - 106 -

## Appendix A

Motions to Intervene in Docket No. CP98-150-006

Algonquin Gas Transmission, LLC
City of New York, New York
Columbia Gas Transmission Corporation
Consolidated Edison Company of New York, Inc.
El Paso Eastern Pipeline Group
KeySpan Delivery Companies[155]
Northern Tuxedo Residents' Association
Town of Tuxedo, New York
Woodstone Lakes Development, LLC


Motions to Intervene in Docket No. CP98-150-007

Central Hudson Gas & Electric Corporation
City of New York, New York
Consolidated Edison Company of New York, Inc.
KeySpan Delivery Companies
Northern Tuxedo Residents' Association
Town of Cortlandt, New York
Village of Croton-on-Hudson, New York
Columbia Gas Transmission Corporation


Motions to Intervene in Docket No. CP98-150-008

City of New York, New York
County of Westchester, New York
Town of Cortlandt, New York

---

[155] The KeySpan Delivery Companies consist of KeySpan Energy Delivery New York, KeySpan Energy Delivery Long Island, Boston Gas Company, Colonial Gas Company, EnergyNorth Natural Gas, Inc., and Essex Gas Company.

Docket No. CP98-150-006, et al.                                    - 107 -

Motions to Intervene in Docket No. CP98-151-003

Benson, Lawrence A.
El Paso Eastern Pipeline Group
Orange and Rockland Utilities, Inc.
Town of Tuxedo, New York
Woodstone Lakes Development, LLC

Motions to Intervene in Docket No. CP98-151-004

Orange and Rockland Utilities, Inc.
Proliance Energy, LLC

Motions to Intervene in Docket No. CP05-19-000

Baltimore Gas and Electric Company
Benson, Lawrence A.
Central Hudson Gas & Electric Corporation
Cities of Charlottesville and Richmond, Virginia (joint motion)
City of New York, New York
Darder, Charles
Dougherty, Christopher and Marianna
East Ohio Gas Company d/b/a Dominion East Ohio and Hope Gas, Inc. d/b/a Dominion
  Hope (joint motion)
Freier, Rolf
NiSource Distribution Companies[156]
Northern Tuxedo Residents' Association
Orange and Rockland Utilities, Inc.
Piedmont Natural Gas Company, Inc.
PSEG Energy Resources and Trade LLC
Rockland County Solid Waste Management Authority
Town of Tuxedo, New York
UGI Utilities, Inc.
Virginia Natural Gas, Inc.

---

[156] The NiSource Distribution Companies consist of Columbia Gas of Kentucky, Inc., Columbia Gas of Maryland, Inc., Columbia Gas of Pennsylvania, Inc., and Columbia Gas of Virginia, Inc.

Docket No. CP98-150-006, et al.                                    - 108 -

Motions to Intervene in Docket No. CP06-76-000

Brookfield, Connecticut Board of Education
Central Hudson Gas & Electric Corporation
Consolidated Edison Company of New York, Inc. and Orange and Rockland Utilities,
        Inc. (joint motion)
Empire State Pipeline
Iroquois Gas Transmission System
KeySpan Delivery Companies
Millennium Pipeline Company, L.L.C.
New England Local Distribution Companies
New Jersey Natural Gas Company
New York State Electric & Gas Corporation and Rochester Gas and Electric Corporation
    (joint motion)
Pilot's Mall LLC
PSEG Energy Resources and Trade LLC
Town of Brookfield, Connecticut
Yankee Gas Services Company

Motions to Intervene in Docket No. CP02-31-002

Algonquin Gas Transmission, LLC
Central Hudson Gas & Electric Corporation
Consolidated Edison Company of New York, Inc.
Millennium Pipeline Company, L.L.C.
New Jersey Natural Gas Company
Niagara Mohawk Power Corporation d/b/a National Grid
State of Connecticut
Town of Brookfield, Connecticut

Docket No. CP98-150-006, et al.                                          - 109 -

## Appendix B

Untimely Motions to Intervene in Docket No. CP98-150-006

County of Westchester, New York
Empire State Pipeline
Hartwood Club, Inc.
Mirant NY-Gen, LLC
Town of Cortlandt, New York
Village of Croton-on-Hudson, New York

Untimely Motion to Intervene in Docket No. CP98-150-007

County of Westchester, New York
Hartwood Club, Inc.

Untimely Motion to Intervene in Docket No. CP98-151-003

Mirant NY-Gen, LLC

Untimely Motions to Intervene in Docket No. CP05-19-000

City of New York, New York
Murray, Steve
Northern Tuxedo Resident's Association
Town of Tuxedo, New York

Untimely Motion to Intervene in Docket No. CP06-76-000

Connecticut Siting Council

Docket No. CP98-150-006, et al.                                    - 110 -

## Appendix C

## Environmental Conditions for the NE-07 Project

1.    Millennium, EPI, Algonquin, and Iroquois shall follow the construction procedures and mitigation measures described in their applications and supplements (including responses to staff data requests) and as identified in the final supplemental EIS, unless modified by this order for their respective projects.  Millennium, EPI, Algonquin, and Iroquois must:

      a.    request any modification to these procedures, measures, or conditions in a filing with the Secretary;

      b.    justify each modification relative to site specific conditions;

      c.    explain how that modification provides an equal or greater level of environmental protection than the original measure; and

      d.    receive approval in writing from the OEP **before using that modification**.

2.    The Director of OEP has delegation authority to take whatever steps are necessary to insure the protection of all environmental resources during construction and operation of the projects.  This authority shall allow:

      a.    the modification of conditions of the order; and

      b.    the design and implementation of any additional measures deemed necessary (including stop-work authority) to assure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from project construction and operation.

3.    **Prior to any construction**, Millennium, EPI, Algonquin, and Iroquois shall each file an affirmative statement with the Secretary, certified by a senior company official, that all company personnel, environmental inspectors, and contractor personnel will be informed of the environmental inspector's authority and have been or will be trained on the implementation of the environmental mitigation measures appropriate to their jobs before becoming involved with construction and restoration activities for their respective projects.

Docket No. CP98-150-006, et al.                                          - 111 -

4.      The authorized facility locations shall be as shown in the final supplemental EIS, as supplemented by filed alignment sheets.  **As soon as they are available, and before the start of any construction**, Millennium, EPI, Algonquin, and Iroquois shall each file with the Secretary any revised detailed survey alignment maps/sheets at a scale not smaller than 1:6,000 with station positions for all facilities approved by the order for their respective projects.  All requests for modifications of environmental conditions of the order or site specific clearances must be written and must reference locations designated on these alignment maps/sheets.

5.      Millennium, EPI, Algonquin, and Iroquois shall each file with the Secretary detailed alignment maps/sheets and aerial photographs at a scale not smaller than 1:6,000 identifying all route realignments or facility relocations, and staging areas, pipe storage yards, new access roads, and other areas that would be used or disturbed and have not been previously identified in filings with the Secretary for their respective projects. Approval for each of these areas must be explicitly requested in writing.  For each area, the request must include a description of the existing land use/cover type, and documentation of landowner approval, whether any cultural resources or federally listed threatened or endangered species would be affected, and whether any other environmentally sensitive areas are within or abutting the area.  All areas shall be clearly identified on the maps/sheets/aerial photographs.  Each area must be approved in writing by the Director of OEP **before construction** in or near that area.

        This requirement does not apply to route variations required herein or minor field realignments per landowner needs and requirements which do not affect other landowners or sensitive environmental areas such as wetlands.

        Examples of alterations requiring approval include all route realignments and facility location changes resulting from:

        a.      implementation of cultural resources mitigation measures;

        b.      implementation of endangered, threatened, or special concern species mitigation measures;

        c.      recommendations by state regulatory authorities; and

        d.      agreements with individual landowners that affect other landowners or could affect sensitive environmental areas.

Docket No. CP98-150-006, et al.                                    - 112 -

6.      Within 60 days of the acceptance of this certificate and **before construction** begins, Millennium, EPI, Algonquin, and Iroquois shall each file an initial Implementation Plan with the Secretary for review and written approval by the Director of OEP, describing how they will implement the mitigation measures required by the order for their respective projects. Millennium, EPI, Algonquin, and Iroquois must file revisions to the plan as schedules change. The plan shall identify:

     a.      how Millennium, EPI, Algonquin, and Iroquois will incorporate these requirements into the contract bid documents, construction contracts (especially penalty clauses and specifications), and construction drawings so that the mitigation required at each site is clear to on-site construction and inspection personnel;

     b.      the number of environmental inspectors assigned per spread, and how the company will ensure that sufficient personnel are available to implement the environmental mitigation;

     c.      company personnel, including environmental inspectors and contractors, who will receive copies of the appropriate material;

     d.      what training and instructions Millennium, EPI, Algonquin, and Iroquois will give to all personnel involved with construction and restoration (initial and refresher training as the project progresses and personnel change), with the opportunity for OEP staff to participate in the training session(s);

     e.      the company personnel (if known) and specific portion of Millennium's, EPI's, Algonquin's, and Iroquois' organization having responsibility for compliance;

     f.      the procedures (including use of contract penalties) Millennium, EPI, Algonquin, and Iroquois will follow if noncompliance occurs; and

     g.      for each discrete facility, a Gantt or PERT chart (or similar project scheduling diagram), and dates for:

          i.      the completion of all required surveys and reports;

          ii.     the mitigation training of on-site personnel;

          iii.    the start of construction; and

Docket No. CP98-150-006, et al.                                      - 113 -

> iv.   the start and completion of restoration.

7.    Millennium, EPI, Algonquin, and Iroquois shall each employ a team (*i.e.*, two or more or as may be established by the Director of OEP) of environmental inspectors per construction spread for their respective projects.  The environmental inspectors shall be:

  a.   responsible for monitoring and ensuring compliance with all mitigative measures required by the order and other grants, permits, certificates, or other authorizing documents;

  b.   responsible for evaluating the construction contractor's implementation of the environmental mitigation measures required in the contract (*see* condition 6 above) and any other authorizing document;

  c.   empowered to order correction of acts that violate the environmental conditions of the order, and any other authorizing document;

  d.   a full-time position, separate from all other activity inspectors;

  e.   responsible for documenting compliance with the environmental conditions of the order, as well as any environmental conditions/permit requirements imposed by other federal, state, or local agencies; and

  f.   responsible for maintaining status reports.

8.    Millennium, EPI, Algonquin, and Iroquois shall each file updated status reports prepared by the lead environmental inspector with the Secretary on a **weekly** basis **until** all construction related activities, including restoration and initial permanent seeding, are complete for their respective projects.  On request, these status reports will also be provided to other Federal and state agencies with permitting responsibilities.  Status reports shall include:

  a.   the current construction status of each spread, work planned for the following reporting period, and any schedule changes for stream crossings or work in other environmentally sensitive areas;

  b.   a listing of all problems encountered and each instance of noncompliance observed by the environmental inspectors during the reporting period (both for the conditions imposed by the Commission and any environmental conditions/permit requirements imposed by other Federal, state, or local agencies);

Docket No. CP98-150-006, et al.                                          - 114 -

     c.     corrective actions implemented in response to all instances of noncompliance, and its cost;

     d.     the effectiveness of all corrective actions implemented;

     e.     a description of any landowner/resident complaints which may relate to compliance with the requirements of the order and the measures taken to satisfy the concerns; and

     f.     copies of any correspondence received by Millennium, EPI, Algonquin, or Iroquois from other Federal, state, or local permitting agencies concerning instances of noncompliance, and the company's response.

9.     Millennium, EPI, Algonquin, and Iroquois each must receive written authorization from the Director of OEP **before commencing service** from their respective projects. Such authorization will only be granted following a determination that rehabilitation and restoration of the right-of-way is proceeding satisfactorily.

10.     **Within 30 days of placing the certificated facilities in service**, Millennium, EPI, Algonquin, and Iroquois shall each file an affirmative statement with the Secretary, certified by a senior company official for their respective projects:

     a.     that the facilities have been constructed and installed in compliance with all applicable conditions, and that continuing activities will be consistent with all applicable conditions; or

     b.     identifying which of the certificate conditions Millennium, EPI, Algonquin, and Iroquois has complied with or will comply with. This statement shall also identify any areas along the right-of-way where compliance measures were not properly implemented, if not previously identified in filed status reports, and the reason for noncompliance.

11.     Millennium, EPI, Algonquin, and Iroquois shall hire and fund a third-party contractor, to work under the direction of the Commission staff, for the sole purpose of monitoring compliance with the environmental conditions attached to the order for their respective projects, including all measures proposed by the companies. A draft monitoring program shall be developed by the companies and filed with the Commission for review and approval of the Director of OEP, along with a proposal from potential contractors that will be available to provide the monitoring and reporting services. The monitoring program shall include the following elements:

Docket No. CP98-150-006, et al.                                    - 115 -

    a.    the employment by the contractor of one to two full-time, on-site monitors per construction spread;

    b.    the employment by the contractor of a full-time compliance manager to direct and coordinate with the monitors, manage the reporting systems, and provide technical support to the Commission staff;

    c.    a systematic strategy for the review and approval by the contract compliance manager and monitors of variances to certain construction activities as may be required by each company based on site-specific field conditions;

    d.    the development of an Internet web site for the posting of daily or weekly inspection reports submitted by both the third party monitors and each company's environmental inspectors; and

    e.    a discussion of how the monitoring program could incorporate and/or be coordinated with the monitoring or reporting that may be required by other federal and state agencies.

12.    Millennium, EPI, Algonquin, and Iroquois shall each establish an environmental mitigation complaint resolution procedure that would be in place throughout construction and restoration of their respective projects. The procedure shall provide landowners and abutters with clear and simple directions for identifying and resolving their environmental mitigation problems or concerns during construction of the pipeline facilities and restoration of the right-of-way. **Prior to construction**, each company shall mail the complaint procedure to each landowner whose property would be crossed by the project and abutters whose properties are adjacent to a road or utility right-of-way that would be used for installation of the pipeline. The complaint resolution procedure must:

    a.    include a local contact (and telephone number) and each pipeline company's "hotline" contact (and toll-free telephone number) that the landowner or abutter shall first call with his/her concerns;

    b.    indicate how long it would take after complaints/inquiries are made for the pipeline company to respond;

    c.    indicate that the response would inform the caller how and when problems were or would be resolved; and

Docket No. CP98-150-006, et al.                                        - 116 -

     d.     instruct the landowner or abutter that if he or she is still not satisfied with the response from contacting the pipeline company's "hotline," the Commission's Enforcement Hotline may be contacted at (877) 303-4340.

In addition, each pipeline company shall include in its weekly status report a table that contains the following information for each problem or concern reported:

     a.     the identity of the caller and the date of the call;

     b.     the alignment sheet number, property identification number, and MP/survey station number of the property;

     c.     a description of the concern/problem; and

     d.     an explanation of how and when the problem was resolved, or why it has not been resolved.

13.    **Prior to construction**, Millennium, EPI, and Algonquin shall update the list of residences within 50 feet of the proposed facilities, and adopt the following measures to minimize the impact on residences within 50 feet of the construction rights-of-way for their respective projects:

     a.     avoid removal of trees and landscaping unless necessary to construct the pipeline or for the safe operation of the construction equipment;

     b.     restore all lawns, landscaping areas and driveways within the construction right of way area promptly after backfilling the trench; and

     c.     install and maintain construction fencing at the edge of the construction right-of-way for a distance of 100 feet on either side of the residence and at a minimum maintain this fencing throughout the open trench phases of the pipe installation.

14.    For any residence within 25 feet of the construction workspace, Millennium, EPI, and Algonquin shall file a site-specific plan with the Secretary for the review and written approval of the Director of OEP **before construction** for their respective projects. The plan shall include:

Docket No. CP98-150-006, et al.                                           - 117 -

    a.    a description of construction techniques to be used (such as reduced pipeline separation, centerline adjustment, use of stone-pipe or drag-section techniques, working over existing pipelines, pipeline crossover, bore, etc.), and include a dimensioned site plan that shows:

        i.    the location of the residence in relation to the new pipeline and, where appropriate, the existing pipelines;

        ii.    the edge of the construction workspace;

        iii.    the edge of the new permanent right-of-way; and

        iv.    other nearby residences, structures, roads, or waterbodies.

    b.    a description of how the company would ensure the trench is not excavated until the pipe is ready for installation and the trench is backfilled immediately after pipe installation; and

    c.    evidence of landowner concurrence if the construction workspace and fencing would be located within 10 feet of a residence.

15.    Millennium, EPI, Algonquin, and Iroquois shall file with the Secretary the location by MP of all drinking water wells and springs within 150 feet of the construction work area and include their distance and direction from the construction work areas for their respective projects, **before construction**.

16.    Millennium, EPI, and Algonquin shall include in their weekly construction progress reports any complaints concerning water supply yield or quality and how each was resolved. **Within 30 days of placing the facilities in service**, each company shall file a summary report identifying all potable water supply systems damaged by construction and how they were repaired for their respective projects.

17.    Millennium, EPI, Algonquin, and Iroquois shall **defer** implementation of any cultural resource treatment plan or measure (including archaeological data recovery), construction or use of all staging, storage, and temporary work areas or new or to-be-improved access roads for their respective projects **until**:

    a.    each company files with the Secretary all additional required cultural resource inventory, evaluation reports, and any necessary treatment plans and the SHPO comments; and

Docket No. CP98-150-006, et al.                                     - 118 -

     b.     the Director of OEP reviews and approves all reports and plans and notifies the companies in writing that treatment plans or measures may be implemented or construction may precede.

All material filed with the Commission containing location character and ownership information about cultural resources must have the cover and any relevant pages therein clearly labeled in bold lettering: **"CONTAINS PRIVILEGED INFORMATION — DO NOT RELEASE."**

## Millennium's Conditions

18.    Millennium shall use the proposed NYSEG Chemung route variation (MP 198.0 to MP 203.6), the NYSEG Tioga-Broome route variation (MP 232.2 to MP 245.0), and the NYSEG Delaware route variation (MP 284.4 to MP 284.9) rather than the segment of the original, approved Millennium project route between these MPs.

19.    Millennium shall acquire from Columbia and continue to use the approximately 7.1-mile-long segment of 24-inch diameter Line A-5 pipeline between MPs 340.5 and 347.7, rather than replace this segment with new 30-inch diameter pipeline.

20.    Millennium shall use the proposed Warwick Isle route variation (MP 350.8 to MP 351.6), rather than the segment of the original, approved Millennium project route between these mileposts.

21.    Millennium shall incorporate the Sterling Forest State Park/Laurel Ridge alternative between (MPs 367.8 and 368.5). Millennium shall consult with the FWS to determine the need for any additional surveys for federally-listed threatened or endangered species and consult with the SHPO to determine the need for additional cultural resource surveys along the Sterling Forest State Park/Laurel Ridge alternative. Millennium shall file with the Secretary, for written review and approval by the Director of OEP, revised construction alignment sheets that show the modified route and workspaces, **prior to construction** in this area.

22.    Millennium shall incorporate the Ramapo River HDD variation (MPs 369.4 to 370.3). Millennium shall consult with the FWS to determine the need for any additional surveys for federally-listed threatened or endangered species and consult with the SHPO to determine the need for additional cultural resource surveys along the Ramapo River HDD variation. Millennium shall file with the Secretary, for written review and approval by the Director of OEP, revised construction alignment sheets that show the modified route and workspaces, **prior to construction** in this area.

Docket No. CP98-150-006, et al.                                    - 119 -

23.    Millennium shall develop a site-specific plan for construction and restoration across the Supa property (approximate MP 242.0). In developing the plan, Millennium shall consider alternative construction methods, such as the stove-pipe method, and limited access across the Supa property along the construction right-of-way after construction. Millennium shall file the site-specific plan with the Secretary for review and written approval of the Director of OEP **prior to construction** in this area.

24.    Millennium shall file with the Secretary a plan for the crossing of any waterbody where the HDD is unsuccessful. This shall be a site-specific plan that includes scaled drawings identifying all areas that would be disturbed by construction. Millennium shall file this plan concurrent with its application to the COE and NYSDEC for a permit to construct using this plan. The Director of OEP must review and approve this plan in writing before construction of the crossing using this plan.

25.    Millennium shall file with the Secretary **prior to construction** a list of the waterbodies where equipment bridges would be installed to facilitate tree clearing along the construction right of way between October 1 and March 30, to avoid impacting the federally endangered Indian bat, and provide documentation of approval of this activity from the NYSDEC.

26.    Millennium shall provide the NPS with an initial waterbody crossing schedule for Delaware River tributary crossings and provide updates to that schedule as may be needed in a manner consistent with section II.A.2 of our Procedures.

27.    Millennium shall conduct tree clearing during the period of October 1 to March 30, to minimize adverse affects on the Indiana bat in the areas of known bat activity, between MPs 346 and 363. Future maintenance activities that involve tree removal, pruning, or similar activities, shall be scheduled to occur between October 1 and March 30 to avoid disturbing roosting bats. Millennium shall employ the services of a qualified bat scientist to investigate trees and/or conduct other surveys as may be recommended by the FWS for the presence of Indiana bats if removal of a limited number of trees is necessary between April 1 and September 30, to avoid a take of bats.

28.    Millennium shall install turtle exclusion fencing during the bog turtle window of activity (April 15 to October 31), where Wetland W611 borders the project construction area. Further, Millennium shall employ a bog turtle monitor to be on hand when construction coincides with the bog turtle window of activity, to conduct a daily pre-construction survey of the Wetland W611 project site and to provide daily monitoring and relocation of bog turtles to suitable habitat outside the Wetland W611 construction area when necessary.

Docket No. CP98-150-006, et al.                                    - 120 -

29.    If blasting is required in designated bald eagle activity areas when bald eagles are present, Millennium shall develop in consultation with the NYSDEC and FWS a bald eagle activity area construction plan that identifies the MP locations where blasting would occur within bald eagle activity areas and a schedule of when blasting would occur. The bald eagle activity area construction plan and all associated consultation documents shall be filed with the Secretary **before construction**.

30.    Millennium shall consult with the FWS and NYSDEC at least one month before the start of construction to determine if any additional bald eagle nests have been found in the vicinity of the project area. Documentation of the results of this consultation shall be filed with the Secretary **before construction**.

31.    Millennium shall file a post-construction noise survey with the Secretary **no later than 60 days** after placing its new compressor station in Corning, New York, in service. If the noise attributable to the operation of both Millennium's compressor station and the adjacent existing Columbia Corning compressor station at full load exceeds an Ldn of 55 dBA at any nearby NSAs, Millennium shall install additional noise controls to meet the level **within one year** of the in-service date. Millennium shall confirm compliance with this requirement by filing a second noise survey with the Secretary **no later 60 days** after it installs the additional noise controls.

**EPI's Conditions**

32.    EPI shall file with the Secretary, **prior to construction across Ganargua Creek**, a site-specific plan for completing the crossing of the creek at CMP 3.6 and wetland 80B for review and written approval of the Director of OEP. The plan shall include scaled drawings identifying all areas and resources that would be disturbed by construction workspaces including pipe lay down areas. The Ganargua Creek crossing plan shall also be provided to the COE and NYSDEC for their review. Any comments EPI receives from these agencies shall be filed with the Secretary.

33.    EPI shall file with the Secretary site specific plans for completing the crossings of Canandaigua outlet (CMP 15.1) and Keuka Lake outlet (CMP 40.6) by HDD, prior to construction of the waterbody crossings, for review and written approval by the Director of OEP. The plans shall include scaled drawings identifying all areas and resources that would be disturbed by construction workspaces including pipe lay down areas.

34.    EPI shall file with the Secretary, **prior to construction of the waterbody crossing**, site specific plans for completing the crossing of Shequaga Creek (CMP 67.0) by a bored crossing, for review and written approval of the Director of OEP. The plan

Docket No. CP98-150-006, et al.                                    - 121 -

shall include scaled drawings identifying all areas and resources that would be disturbed by construction workspaces.

35.    EPI shall file with the Secretary for review and written approval of the Director of OEP, site-specific restoration plans, including scaled drawings, for the crossing of Glen Creek (CMP 62.9) and Townsend Creek (CMP 63.8) that describe and show the areas that would be affected by restoration and how these areas would be restored, **prior to construction of the waterbody crossings**. Also, EPI shall provide any correspondence concerning this issue with the NYSDEC and the COE.

36.    EPI shall file with the Secretary, **prior to construction of the Oakfield compressor station,** a final site-specific plan for the access road to the proposed compressor station, that identifies how it would cross the unnamed waterbody on a permanent and temporary basis and identifies all of the temporarily and permanently affected areas, for review and written approval of the Director of OEP.

37.    EPI shall consult with the COE to develop a wetland mitigation plan, consistent with that prepared for the original Millennium project, to compensate for impacts to forested wetlands. The plan shall include on-site restoration of all affected wetlands, as well as off-site forested wetland acquisition, at a minimum ratio of 2:1, and forested wetland creation, at a minimum ratio of 1:1, for the total acreage of forested wetlands that would be converted to non-forested wetland communities, and shall address restoration of temporary workspaces. EPI shall file the final wetland mitigation plan with the Secretary as soon as it is available.

38.    EPI shall make all reasonable efforts to ensure that its predicted noise levels from the Oakfield compressor station are not exceeded at nearby NSAs, and file a noise survey with the Secretary **no later than 60 days** after placing the new compressor station in service. However, if the noise attributable to the operation of the compressor station at full load exceeds an Ldn of 55 dBA at any nearby NSAs, EPI shall file a report on what changes are needed and install additional noise controls to meet that level **within one year** of the in-service date. EPI shall confirm compliance with the Ldn of 55 dBA requirement by filing a second noise survey with the Secretary **no later than 60 days** after it installs the additional noise controls.

39.    EPI shall file with the Secretary for review and written approval of the Director of OEP site specific plans identifying how noise would be reduced during horizontal directional drilling at Canandaigua outlet and Keuka Lake outlet **prior to construction of the crossings**. The plan shall include projected daytime and nighttime noise levels at nearby residences and mitigation measures that would be used to minimize noise at these residences.

Docket No. CP98-150-006, et al.                                    - 122 -

**Algonquin's Conditions**

40.     Algonquin shall use Site F for construction of the Oxford compressor station in Oxford, Connecticut.

41.     Algonquin shall file with the Secretary for review and written approval by the Director of OEP, a request for site specific variances to section V.B.2 of our plan.  The request shall include milepost location(s), spacing for the permanent slope breakers, and reasons for the requested variance at the identified location(s).

42.     Algonquin shall expand its SPCC Plan to specifically include a requirement that all construction equipment be inspected daily for leaks.

43.     Algonquin may use extra workspaces within 50 feet of these resources:  Mahwah River, AMP 0.54; Intermittent Stream (Wetland 02), AMP 0.76; Intermittent Stream, AMP 1.43; Intermittent Stream, AMP 2.35; Intermittent Stream, AMP 2.95; Intermittent Stream (Wetland 03), AMP 3.26; Intermittent Stream (Wetland 04), AMP 3.29; Intermittent Stream, AMP 4.12; Intermittent Stream, AMP 4.66; and Intermittent Stream, AMP 4.87.  However, **prior to the use of these extra workspaces**, Algonquin shall file with the Secretary for review and written approval by the Director of OEP, site specific plans for each of the identified locations that show the configuration and dimensions of the extra workspaces relative to the waterbody or wetland, the setback from these resources, the proposed pipeline construction right-of-way, and all existing or proposed pipeline facilities.  The site specific plans shall be included with the pipeline construction alignment sheets.

44.     Algonquin shall conduct tree clearing during the period of October 1 to March 30, to minimize adverse affects on the Indiana bat pending comment by the FWS.  Future maintenance activities that involve tree removal, pruning, or similar activities, shall be scheduled to occur between October 1 and March 30 to avoid disturbing roosting bats.

45.     Algonquin may use an additional 25 feet of temporary extra workspace adjacent to the existing Algonquin right of way at these locations:  Wetland 01, AMP 0.29 to AMP 0.60; Wetland 02, AMP 0.73 to AMP 0.82; Wetland 03, AMP 3.25 to AMP 3.27; and Wetland 04, AMP 3.28 to AMP 3.31.  However, **prior to the use of these extra workspaces**, Algonquin shall file with the Secretary site specific plans for each location showing all workspaces and the existing and proposed pipeline facilities, for review and written approval by the Director of OEP.  Algonquin shall also file with the Secretary concurrence from the COE about the use of these areas.

Docket No. CP98-150-006, et al.                                    - 123 -

46.     Algonquin shall consult with the COE to develop a wetland mitigation plan,
consistent with that prepared for the original Millennium project, to compensate for
impacts to forested wetlands. The plan shall include on-site restoration of affected
wetlands, off-site forested wetland acquisition, at a minimum ratio of 2:1, and forested
wetland creation, at a minimum ratio of 1:1, for all forested wetlands that would be
converted to non-forested wetland communities and shall also address restoration of
temporary workspaces. Algonquin shall file the final wetland mitigation plan with the
Secretary as soon as it is available.

47.     Algonquin shall file with the Secretary **prior to construction**, information about
any additional pipe/contractor yard(s) it would use to construct its project including
topographic maps showing the pipe/contractor yard locations and quantified information
about impacts on land use, residences, wetlands, wildlife, and vegetation for review and
written approval of the Director of OEP.

48.     Algonquin shall file with the Secretary all mitigation plans for construction of the
pipeline and restoration of the construction right-of-way developed with the PIPC for
construction in Harriman State Park and with the Rockland County Division of
Environmental Resources for construction in Kakiat County Park **before construction in
the parks** for review and written approval of the Director of OEP.

49.     Algonquin shall file a post-construction noise survey with the Secretary **no later
than 60 days** after placing the modified Hanover, Stony Point, and Southeast compressor
stations in service. If the noise attributable to the operation of any of these compressor
stations at full load exceeds an Ldn of 55 dBA at any nearby NSAs, Algonquin shall
install additional noise controls to meet the level **within one year** of the in-service date.
Algonquin shall confirm compliance with this requirement by filing a second noise
survey with the Secretary **no later 60 days** after it installs the additional noise controls.

50.     Algonquin shall make all reasonable efforts to assure its predicted noise levels
from the Oxford compressor station are not exceeded at nearby NSAs, and file a noise
survey with the Secretary, the CSC, and the Towns of Oxford and Middlebury **no later
than 60 days** after placing the new compressor station in service. However, if the noise
attributable to the operation of the compressor station at full load exceeds an Ldn of 55
dBA at any nearby NSAs, Algonquin shall file a report on what changes are needed and
install additional noise controls to meet that level **within one year** of the in-service date.
Algonquin shall confirm compliance with the Ldn of 55 dBA requirement by filing a
second noise survey with the Secretary **no later than 60 days** after it installs the
additional noise controls.

Docket No. CP98-150-006, et al.                                              - 124 -

**Iroquois' Conditions**

51.    Iroquois shall develop in consultation with the Connecticut Department of
Environmental Protection, a plan for handling waste materials that may be encountered
during construction of any facilities at the Brookfield compressor station site on High
Meadow Road in Brookfield, Connecticut. This plan should be filed with the Secretary
for review and written approval by the Director of OEP, **prior to construction** of the
compressor station.

52.    Iroquois shall make all reasonable efforts to ensure that its predicted noise levels
from the Brookfield compressor station are not exceeded at nearby NSAs, and file a noise
survey with the Secretary and the CSC **no later than 60 days** after placing the new
compressor station in-service. However, if the noise attributable to the operation of the
compressor station at full load exceeds an Ldn of 55 dBA at any nearby NSAs, Iroquois
shall file a report on what changes are needed and install additional noise controls to meet
that level **within one year** of the in-service date. Iroquois shall confirm compliance with
the Ldn of 55 dBA requirement by filing a second noise survey with the Secretary **no
later than 60 days** after it installs the additional noise controls.

53.    Before construction and once the final site layout, building design and equipment
selection are determined, Iroquois shall file with the Secretary a comprehensive noise
analysis showing that the noise levels at nearby NSAs, such as schools (specifically the
Whisconier Middle School), hospitals, and residences would not exceed an Ldn of 55
dBA, due to the operation of the Brookfield compressor station at full load.

54.    Iroquois shall file a post-construction noise survey with the Secretary **no later
than 60 days** after placing the modified Dover compressor station in service with the
proposed additional gas coolers. If the noise attributable to the operation of the modified
compressor station at full load exceeds an Ldn of 55 dBA at any nearby NSAs, Iroquois
shall install additional noise controls to meet the level **within one year** of the in-service
date. Iroquois shall confirm compliance with this requirement by filing a second noise
survey with the Secretary **no later 60 days** after it installs the additional noise controls.

**Additional Conditions**

55.    Prior to construction, Millennium shall file with the Secretary, for review and
written approval of the Director of OEP, a report about the diesel fuel observed on the
Supa property in test boring one on January 12, 2006. The report shall provide
information about potential sources of diesel fuel and shall address whether further

Docket No. CP98-150-006, et al.                                    - 125 -

evidence of diesel fuel was observed during any subsequent instances of monitoring the
test borings.  The report shall also address the issue of the need for clean up and a plan
for clean up.

56.      Prior to construction, Algonquin shall file with the Secretary, for review and
written approval of the Director of OEP, the final site-specific plan for crossing the
Mahwah River developed in consultation with the COE, NYSDEC, and the affected
landowner(s).