UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MILLENNIUM PIPELINE COMPANY, L.L.C.,

*Plaintiff*,

-vs-

CERTAIN TEMPORARY EASEMENTS IN 322 SLEEPY VALLEY ROAD, TOWN OF WARWICK, ORANGE COUNTY, NEW YORK, S.B.L. No. 31-1-17, BREAKAWAY TRAILS, INC., John Doe, et al., and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY EASEMENTS IN (NO NUMBER) DISTILLERY ROAD, TOWN OF WARWICK, ORANGE COUNTY, NEW YORK, S.B.L. No. 29-1-21, GEORGE BURKERT AND ANNA BURKERT, John Doe, et al., and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY EASEMENTS IN (NO NUMBER) ROUTE 42, TOWN OF FORESTBURG, SULLIVAN COUNTY, NEW YORK, S.B.L. No. 39-1-11, ADELIA M. MASTERS, John Doe, et al., and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY EASEMENTS IN 65 LIBERTY CORNERS ROAD, a/k/a 61 LIBERTY CORNERS ROAD, TOWN OF WARWICK, ORANGE COUNTY, NEW YORK, S.B.L. No. 11-1-21.2, DOUGLAS A. PATZELT AND LAUREN PATZELT, John Doe, et al., and Unknown Owners,

And

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Civil Action No. 07-CIV-5815

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (No Number) Route 17A, TOWN
OF TUXEDO, ORANGE COUNTY, NEW YORK,
S.B.L. No. 1-1-34.2, SWISS NORTH AMERICAN
PROPERTIES - USA, LLC, John Doe, et al., and
Unknown Owners,

         *Defendants*.

## PRELIMINARY STATEMENT

Plaintiff/condemnor Millennium Pipeline Company, L.L.C. ("Millennium") submits this memorandum of law in support of its motion for a preliminary injunction pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), authorizing it to immediately enter upon the following real properties for the purpose of commencing construction of a natural gas pipeline to effectuate a public project approved by the Federal Energy Regulatory Commission ("FERC"):

- Property owned by Defendant Breakaway Trails, Inc., known as 322 Sleepy Valley Road, Town of Warwick, County of Orange, New York, S.B.L. No. 31-1-17 (the "Breakaway Property");

- Property owned by Defendants George and Anna Burkert, known as (No Number) Distillery Road, Town of Warwick, County of Orange, New York, S.B.L. No. 29-1-21 (the "Burkert Property");

- Permanent and temporary easements in property owned by Defendants Adelia M. Masters, Michele Masters, William Gall and Leslie E. Smith, Jr., known as (No Number) Route 42, Town of Forestburg, County of Sullivan, New York, S.B.L. No. 39-1-11 (the "Masters Property");

- Property owned by Defendants Douglas and Lauren Patzlet, known as 65 Liberty Corners Road a/k/a 61 Liberty Corners Road, Town of Warwick, County of Orange, New York, S.B.L. No. 11-1-21.2 (the "Patzelt Property"); and

- Property owned by Swiss North American Properties-USA, LLC, known as (No Number) Route 17A, Town of Tuxedo, County of Orange, New York, S.B.L. No. 1-1-34.2 (the "Swiss Property").

The Breakaway Property, the Burkert Property, the Masters Property; the Patzelt Property and the Swiss Property are collectively referred to herein as the "Subject Property."

There is an **existing pipeline**, pursuant to existing easements, located at the Breakaway Property, the Burkert Property, the Masters Property and the Swiss Property, and Millennium's proposed pipeline will replace it. This Court should grant the motion because Millennium possesses the power of eminent domain and has filed a Complaint[1] to acquire easements required to construct the pipeline, which is pending in this Court, is valid in all respects and in which there is a likelihood of success on the merits; Millennium has no adequate remedy at law; Millennium will suffer irreparable harm in the event the motion is not granted; the balance of the equities lie with Millennium; and, prior to entry onto the real properties, Millennium will post a bond with the Court in an amount to be determined by the Court.

## STATEMENT OF FACTS

Millennium seeks to construct an approximate 182 mile long natural gas pipeline beginning at a new compressor station in Corning, New York, traversing the southern tier of New York through the counties of Steuben, Chemung, Tioga, Broome, Delaware, Sullivan, Orange and Rockland, and terminating at the Ramapo measuring and regulating station in Ramapo, New York (the "Project"). A majority of the Millennium pipeline will be located within or along the right-of-way of Columbia Gas Transmission Corporation's ("Columbia") existing Line A-5 pipeline, which the Millennium pipeline will replace. Affidavit of Daryl J. Colosi, Esq., sworn to on June 18, 2007 ("Colosi Affidavit"), ¶4. On December 21, 2006, the FERC issued an Order amending the Certificate of Public

---

[1] Jurisdiction is conferred on this Court by 15 U.S.C. §717(f); 28 U.S.C. §1331; and FRCP 71A(a).

Convenience and Necessity it had previously issued to Millennium in 2002 over an earlier version of the Project (the "2006 FERC Order" or "Certificate"). *Id.* ¶8. A copy of the 2006 FERC Order is attached to Millennium's Complaint as Exhibit 1.

For the past few years and continuing through the filing of the Complaint, Millennium has negotiated in good faith with Defendants Breakaway Trails, Inc., George and Anna Burkert, Douglas and Lauren Patzelt and Swiss North American Properties–USA, LLC (or their predecessors in title) to attempt to purchase the required easements from them. These efforts have included the following: (i) multiple telephone conferences with all of the Defendants/property owners or their representatives to explain the Project, its location and its impact on the respective parcels that make up the Subject Property; (ii) at least one in-person meeting with Breakaway Trails, Inc.'s Vice President and Douglas and Lauren Patzelt. Mr. and Mrs. Burkert refused to meet with Millennium. Leslie Smith emerged as the spokesperson for the several persons (including himself) that he own the Masters Property together, and he refused to meet with Millennium. Millennium did not seek to meet with representatives from Defendant Swiss North American Properties–USA, LLC because Millennium's offices are located in New York and Swiss' offices are located in North Carolina. However, representatives of Millennium had multiple telephone conferences with Swiss' attorney; (iii) Millennium mailed the Defendants/property owners proposed easement agreements and maps showing the locations of the required easement(s); (iv) Millennium retained appraisal consultants to appraise the potential damages to each of the parcels that make up the Subject Property anticipated to be caused by the Project easement(s); and (v) Millennium made offers to purchase such easement(s), including its most recent offers made on April 26, 2007 (to

Defendants Breakaway Trails, Inc., George and Anna Burkert and Douglas and Lauren Patzelt), on May 8, 2007 (to Defendant Swiss North American Properties–USA, LLC) and on June 18 (to Defendants Adelia M. Masters, Michele Masters, William Gall and Leslie E. Smith, Jr.), which, with respect to all parcels, were for amounts in excess of the appraised values. Colosi Affidavit, ¶25.

ARGUMENT
POINT I

MILLENNIUM'S COMPLAINT
SHOULD BE GRANTED

A. **The FERC Possesses Jurisdiction Over the Project and Has Determined It Shall Serve the Public Convenience and Necessity**

The FERC has been delegated regulatory authority over the interstate sale and transportation of natural gas and natural gas companies engaged in such transactions, because Congress determined in the Natural Gas Act ("NGA") that

> the business of transporting and selling natural gas for ultimate distribution to the public is affected with a **public interest**, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate commerce is necessary in the **public interest**.

15 U.S.C. §717 (emphasis added).

In reviewing the instant Project to determine whether to issue the Certificate, the FERC fully reviewed all matters relevant to the public interest, in accordance with *Atlantic Ref. Co. v. Pub. Serv. Comm'n of N.Y.*, 360 U.S. 378 (1959). In this regard, and pursuant to the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §4321-70f (2000), the FERC has promulgated extensive environmental review regulations for its use to evaluate the land use and potential environmental and siting impacts of proposed

pipeline projects. 18 C.F.R. Part 380. The Certificate issued to Millennium in connection with the instant Project includes a detailed analysis of such matters, including, *inter alia*, the Project's route and alternative routes and its impact on the environment and persons along the approved route. *See* Complaint, Exhibit 1, *passim*.

The FERC determined the Project will serve the public convenience and necessity, as follows:

- By providing the northeast with access to gas supplies from hubs in Ontario, Canada and Chicago, Illinois;

- By increasing pipeline capacity in southeastern New York;

- By providing access to natural gas storage fields located in Western New York; and

- By addressing increased demands for natural gas in the New York City area, as required by the increasing demands of electric generating plants that are fueled primarily by natural gas. In this regard, the FERC also recognized that gas demand in the New York City metropolitan area is close to exceeding the capacity of the pipelines serving it and that market studies continue to indicate a growing demand for natural gas in such area.

*See* Complaint, Exhibit 1, pp. 29-30.

No one, including the Defendants herein, may challenge the FERC Certificate in the instant proceeding before this Court. *Williams Natural Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990). *See also Hardy Storage Co., LLC v. An Easement to Construct, Operate and Maintain 12-Inch and 20-Inch Gas Transmission Pipelines Across Properties In Hardy County*, No. 06-7, 2006 WL 1004719, at *7 (N.D.W.V. Apr. 12, 2006) ("this Court does not have the power to look beyond the Federal Energy Regulatory Commission's prior determinations, particularly with regard to the issue of whether the Plaintiff is empowered to seek lands by condemnation and the issue of whether the taking is for a public need.")

**B.   Millennium Possesses the Power of Eminent Domain and Its Complaint Complies with FRCP 71A**

As the holder of the FERC Certificate, Millennium possesses the power of eminent domain to acquire the temporary easement in the Property required for the Project. Millennium's authority is derived from the NGA, 15 U.S.C. §717-717w, which provides in pertinent part, as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipeline or pipelines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipeline or pipelines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. §717f(h).

The NGA is typical of federal statutes granting the power of eminent domain in that it does not prescribe the procedural methods or steps for exercising the power. FRCP 71A provides such a procedure and Millennium filed its Complaint in this action pursuant to FRCP 71A. *See United States v. 93.970 Acres Land,* 360 U.S. 328, 79 S. Ct. 1193, 1196 n. 7 (1959); *see also Southern Natural Gas Co. v. Cullman County,* 197 F.3d 1368 (11th Cir. 1999). The Complaint clearly sets forth the authority for the taking, the use for which the easements in the Subject Property are to be taken, the identity of the Subject Property and the persons with an interest in those portions of the Property sought to be acquired as a permanent and/or temporary easements, and the Complaint otherwise

complies with the Rule's pleading requirements [FRCP 71A(c)(1)-(2)] and all other requirements in all respects.

The Court should grant the Complaint because the FERC has issued the Certificate authorizing the Project, Millennium is vested with the power of eminent domain pursuant to the NGA and Millennium's Complaint complies with FRCP 71A in all respects.

### POINT II
### MILLENNIUM SHOULD BE PERMITTED TO IMMEDIATELY ENTER UPON THE SUBJECT PROPERTY

A.  **Millennium's Motion for Immediate Possession is Consistent with FRCP 71A.**

Millennium has filed the instant motion because the granting of its Complaint will not, by itself, provide Millennium with the right to immediately enter upon the Subject Property. Rather, FRCP 71A provides for a bifurcated process whereby the district court first makes a determination over the sufficiency of the complaint and then makes a determination over the award of just compensation to be paid to the landowner and any other persons with an interest in the property to be acquired. The condemnor may enter upon such property following the condemnor's payment of the Court-determined just compensation. *See* FRCP 71A; *see also Kirby Forest Industries, Inc. v. United States,* 467 US 1, 6 (1984).

There are no provisions in FRCP 71A or the NGA that permit the condemnor to immediately enter private property prior to the Court's determination of just compensation. However, many important public projects, like Millennium's instant Project, are complex, involving many parcels of land, which would not be capable of

being developed unless the condemnor were permitted to immediately enter upon the property.[2] For this reason, a body of law has developed whereby the district courts have exercised their inherent equitable powers to authorize holders of certificates of public convenience and necessity to immediately enter upon private property for pipeline construction. FRCP 71A contains no language prohibiting a condemnor from pursuing available procedures to immediately enter upon private property prior to the entry of the final judgment over just compensation. Indeed, the Advisory Committee that drafted FRCP 71A was well aware of such procedures but decided against formally including them in FRCP 71A because "the procedure . . . being followed [to allow immediate possession] seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." FRCP 71A Advisory Committee's Supplementary Report, 11 F.R.D., 222, 228 (March 1951).

### B.   Millennium Has Satisfied the Requirements for a Preliminary Injunction

The Court in *East Tennessee Natural Company Co., v. Sage*, 361 F.3d 808 (4th Cir. 2004) analyzed the history and body of law that provides authority to Millennium to immediately enter upon the Subject Property and held:

> [O]nce a district court determines that a gas company has the right to condemn property under the [Natural Gas Act], the Court may use its equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction.

*Id.*, 361 F.3d at 831.

FRCP 71A is a special rule adopted in 1951 specifically for condemnation. It allows for the granting of preliminary injunctions pursuant to FRCP 65(a) because it

---

[2] The instant Project involves the construction of an approximately 182 mile long pipeline across 1,478+/- properties through eight counties. Colosi Affidavit, ¶¶4, 16.

provides that the regular rules of civil procedure, like FRCP 65(a), adopted with the original rules in 1937, apply to any subject not covered by the special rule. FRCP 71A(a).

Millennium has satisfied the first prong of the *Sage* test; i.e., Millennium has demonstrated that it possesses the power of eminent domain to acquire permanent and temporary easements in the Subject Property for a public project approved by the FERC, and Millennium has filed the Complaint seeking to acquire such easements, which is valid in all respects. *See* Point I above. For the reasons set forth below, Millennium has satisfied the requirements for a preliminary injunction and its motion should be granted.

This Court recently restated that a party seeking a preliminary injunction must establish irreparable harm and **either** a likelihood of success on the merits **or** a balance of the hardships tipping decidedly in its favor. *Lusk v. Village of Cold Springs*, 418 F.Supp.2d 314, 318-319 (SDNY 2005) *citing Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992). Millennium satisfies both of these requirements.

### 1. Millennium will Suffer Irreparable Harm if the Motion is not Granted

The construction of a pipeline the size of the Millennium's proposed pipeline, which shall extend through almost 1,500 parcels over 182 miles, requires an enormous amount of coordination, organization and planning. Such construction is performed in an assembly-line fashion, where the construction crews methodically move along the route of the pipeline. One property owner, by denying access to his or her property, could delay construction of the entire pipeline. The FERC Certificate provides that Millennium shall complete construction of the pipeline and have it in service by December 21, 2009, although Millennium plans to be in service by November 2008. Colosi Affidavit, ¶¶16-18; Complaint, Exhibit 1, p. 105.

In order to meet this deadline, and maintain service to customers presently serviced by the existing Columbia Line A-5 pipeline that the Millennium pipeline will replace, Millennium must sequence construction over the next two years, including the construction of a portion of the pipeline later this year. Indeed, construction must commence well before just compensation determinations are concluded by the Court in order to meet Millennium's proposed in-service date. Millennium's ability to timely construct the pipeline will be gravely hindered – if not made to be impossible - in the event Millennium is required to skip construction at one or more of the four parcels that make up the Subject Property and return to them next year (or later) following the Court's determination of just compensation. The inability to sequence construction would likely undermine the Project and its important FERC-determined public purposes. Colosi Affidavit, ¶¶16-18.

Moreover, and specifically with respect to the Masters Property, Millennium is required to enter upon such Property on or about August 1, 2007 in order to complete pipeline construction at it between August 1 and September 15, 2007, in accordance with the 401 Water Quality Certificate, as modified, issued by the New York State Department of Environmental Conservation ("NYSDEC") on May 29, 2007. Such 401 Water Quality Certificate provides that Millennium shall "perform the crossing of the Mongaup River / Rio Reservoir ... to coincide with a reservoir draw-down period, between August 1 and September 15." Colosi Affidavit, ¶19; Exhibit 1 thereto at §J, p. 3. The Masters Property is located within the area of the Mongaup River / Rio Reservoir.

In the following cases, condemnors proceeding according to the NGA, under circumstances similar to but less compelling than Millennium's, demonstrated they

would suffer irreparable harm if their respective motions for immediate entry were not granted: *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 210 F.Supp.2d 976 (N.D. Ill. 2002); *East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia*, 2006 WL 1133874 (W.D. Va. Apr. 26, 2006); and *E. Tenn. Natural Gas Co., v. Sage*, 361 F.3d 808 (4th Cir. 2004).

In *Guardian*, the proposed pipeline corridor extended approximately 85 miles, from Joliet, Illinois to the Wisconsin border, and through four counties. *Guardian*, 210 F. Supp. 2d. at 977. In *Sage*, where the proposed gas pipeline measured approximately 94 miles in length, the Fourth Circuit aptly framed the issue and stated the basis for finding that the condemnor gas company would suffer irreparable harm by quoting the District Court below:

> [A]ny single parcel has the potential of holding up the entire project ... and to require ETNG [the condemnor] to build up to a parcel of land [it] does not possess, skip that parcel and then continue on the other side would prove wasteful and inefficient.

*Sage*, 361 F.3d at 829.

In *East Tennessee Natural Gas, LLC*, the proposed gas pipeline measured 32 miles in length and six property owners resisted the condemnor's motions for immediate possession. 2006 WL 1133874 at *2.

The pipelines in each of the cases cited above are dwarfed by the approximate 182 mile long Millennium pipeline.

Similarly, in *Northwest Pipeline Corporation v. The 20' x 1,430' Pipeline Easement*, 197 F.Supp.2d 1241 (E.D.Wash. 2002), the gas company sought to relocate a portion of an existing pipeline out of the public right of way in Barnes Road in the City of

Spokane, Washington, and only a single parcel of private property would be impacted by the relocation. Irreparable harm was found to exist because the City of Spokane considered the improvement of Barnes Road to be vital to the improvement of the transportation infrastructure in the area. By way of comparison, the Millennium Project involves hundreds of properties (almost 1,500) and the Project's FERC-determined public purposes, designed to address natural gas shortages in the northeast and New York City area, are significantly more compelling than traffic congestion in the Barnes Road area of the City of Spokane. Indeed, *Sage* described the "need for natural gas" as a "substantial public interest" [361 F.3d at 826] and noted that the proposed pipeline, like the Millennium pipeline, "will make gas available for electric power generation plants." *Id.*, 361 F.3d at 830.

### 2. Millennium is Likely to Succeed on the Merits

Where, as here, Millennium requires easements in the Subject Property for pipeline construction, the FERC has issued a Certificate and, by virtue of being a certificate holder, the NGA grants Millennium the power of eminent domain, "it is highly likely that [Millennium] ultimately will succeed on the merits of the case." *East Tennessee Natural Gas, LLC*, WL 1133874 at *13; *See also Sage* at pp. 829-830.

### 3. The Balance of the Hardships Tips Decidedly in Millennium's Favor

Millennium seeks to construct the pipeline according to a schedule that will maintain uninterrupted gas service to the existing Line A-5 customers while also achieving the FERC's goals of providing much needed gas supplies to the New York City area. While Millennium has demonstrated that it will be irreparably harmed and the

public Project will likely be jeopardized in the event its motion is not granted, the Defendants herein will not be harmed.

A property owner is fully protected where the condemnor deposits funds prior to immediately entering his or her property in an amount determined by the court. *East Tennessee Natural Gas, LLC*, WL 1133874 at *12; *Sage*, 361 F.3d at 824; *Northern Border Pipeline Co. v. 127.79 Acres of Land*, 520 F.Supp. 170 (DND 1981). In *East Tennessee v. 1.28 Acres of Land*, the Court directed the condemnor to deposit funds in an amount based on purchase prices the condemnor recently paid for similar properties. Similarly, in *Sage*, the court found sufficient the condemnor's deposit of funds in an amount equal to the condemnor's appraised values of the easements to be condemned. *Id*, 361 F.3d at 824.

In *Northern Border Pipeline Co.*, the court granted the gas company's motion for immediate possession upon the condition that the condemnor deposit funds equal to the condemnor's estimate of just compensation plus additional funds or a bond equal to at least twice such estimate. The property owner and all persons with an interest in the property were permitted to apply to the Court for an order distributing the funds deposited in the amount of the condemnor's estimate of just compensation, while the remaining deposited funds or bond were to be later disposed of and any deficiency or overpayment determined in accordance with the trial procedures of FRCP 71A(j).

Such deposit is also required by the injunction provisions of FRCP 65(c), which provide as follows:

> No . . . preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages

> as may be incurred or suffered by any party who is found to have been wrongfully . . . restrained.

In accordance with FRCP 65(c) and the cases identified above, Millennium will deposit funds with the Court in an amount determined by the Court for the benefit of Defendants Breakaway Trails, Inc., George and Anna Burkert, Douglas and Lauren Patzelt and Swiss North American Properties, USA-LLC and anyone else that possesses an interest in those portions of the Subject Property to be burdened by the easements. Millennium's appraiser has determined the potential damages to the Subject Property as a result of such easements to be in the following amount: $13,000 for the Breakaway Property; $14,000 for the Burkert Property; $15,000.00 for the Masters Property; $37,000 for the Patzelt Property; and $16,900 for the Swiss Property. Colosi Affidavit, ¶21.

The gas companies in *Sage* and *East Tennessee Natural Gas, LLC*, were directed to deposit funds in the amount of the appraisals (*Sage*) or similarly in the amount of purchase prices the gas company had made to other property owners to purchase easements in similar properties (*East Tennessee Natural Gas, LLC*). The condemnor was not required to deposit any premium. However, the court in *Northern Border Pipeline Co.* required that a premium be deposited. Accordingly, Millennium respectfully requests that its motion be granted upon its deposit of funds in the afore-mentioned amounts determined by its appraiser and that no premium be required to be deposited. In the event the Court determines that Millennium is required to deposit funds in excess of such appraised values, Millennium respectfully requests that such amounts be no more than fifty percent of the appraised values.

In addition to the protections afforded the Defendants by the deposits, it is doubtful the Defendants can produce any evidence that they will suffer any additional

harm other than the harm they will inevitably suffer as a result of the takings of an easement or easements in their respective parcels that make up the Subject Property, for which they will be justly compensated and, therefore, made whole. *See East Tennessee Natural Gas, LLC* WL 1133874 at *14. Similarly, in the extraordinarily unlikely event construction begins at the Subject Property and the Project is abandoned, the Property could be restored sufficiently to its prior condition and damages could be awarded to the Defendants to compensate them for any Court-determined damages to the Subject Property. *See USG Pipeline Co. v. 1.74 Acres of Land*, 1 F.Supp.2d 816, 826 (E.D. Tenn. 1998).

### 4. Millennium Has Negotiated With the Defendants Subject Property Owners in Good Faith.

There is a split of authority among the district courts over whether the condemnor is required to negotiate in good faith with the property owner. *USG Pipeline Co.*, recognizes such a requirement, based on the language of the NGA, which states that the holder of a FERC Certificate must exercise the power of eminent domain when it "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for [the necessary easements]." *USG Pipeline Co.*, 1 F.Supp.2d at 819, *quoting* 15 USC §717f (h).

The *USG* Court, however, appears to be reading a requirement into NGA §717f(h) that does not otherwise exist. In this regard, *East Tennessee Natural Gas, LLC* analyzed FRCP 71A and the same language of NGA §717f(h) and came to the opposite conclusion:

> [N]othing in the act [i.e., the NGA] or Federal Rule of Civil Procedure 71A requires the condemnor to negotiate in good faith. All the act requires is a showing that the plaintiff has

>been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid.

*East Tennessee Natural Gas, LLC* at *10. *See also Kansas Pipeline Co. v. Land Located in Section 6, S.W. Quarter, Twp. 32S, Range 10W, County of Barber,* 210 F.Supp.2d 1253 (D. Kan. 2002).

In any event, as detailed in the Statement of Facts above and in the accompanying Colosi Affidavit, over the past few years, Millennium negotiated in good faith each of the Defendants/property owners, including explaining the Project and its location and negotiating to purchase the easements during multiple telephone conferences; in-person meetings with several of the Defendants/property owners; using outside appraisal consultants to appraise the potential damages to the Subject Property; and making purchase offers in amount in excess of the appraised values of the Subject Property's damages. Colosi Affidavit, ¶25.

## CONCLUSION

For the foregoing reasons, the Court should grant Millennium's motion for a preliminary injunction, authorizing it to immediately enter upon the parcels that make up the Subject Property for the purposes of timely and safely developing the Project, together with such other and further relief as the Court deems appropriate.

DATED:    June 18, 2007          **HISCOCK & BARCLAY, LLP**

By: /s/ Dennis R. McCoy
Dennis R. McCoy DM4591
Darryl J. Colosi DC8693*

*Attorneys for Plaintiff*
Millennium Pipeline Company, L.L.C.
Office and Post Office Address
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203-1414
Telephone: (716) 856-5400

*Application for admission to the United States District Court for the Southern District of New York pending; swearing-in ceremony scheduled for June 26, 2007.