Exhibit 1 to Colosi Affidavit

Case 7:07-cv-05815-KMK-MDF   Document 16-2   Filed 07/17/2007   Page 1 of 14

**New York State Department of Environmental Conservation**
Division of Environmental Permits, 4th Floor
625 Broadway, Albany, New York 12233-1750
Phone: (518) 402-9167 • **FAX:** (518) 402-9168
Website: www.dec.ny.gov



Alexander B. Grannis
Commissioner

May 29, 2007

Richard Leehr, President
Millennium Pipeline Company, LLC.
One Blue Hill Plaza, 7th Floor
P.O. Box 1565
Pearl River, NY 10965-8565

Re: DEC No.0-9999-00055/00003
Millennium Pipeline Project - Phase 1
Water Quality Certificate Modification

Dear Mr. Leehr:

The Department of Environmental Conservation ("DEC") has completed its review of the request by Millennium Pipeline Company ("Millennium") for modification of the water quality certificate originally issued for the above-referenced project on December 8, 1999. The enclosed, modified certificate reflects the project changes that have occurred since original certification, notably the reduced geographic scope of the project, the reduced size of pipe, and some minor routing changes.

This certificate is effective today, and shall run concurrent with the authorization issued Millennium by the Federal Energy Regulatory Commission ("FERC") on December 21, 2006 in its order regarding Docket Nos. CP98-150-006, 007, and 008.

The enclosed certificate does not include what is referred to as "Appendix A" in the certificate. Appendix A is the list of DEC contacts for this project. That list will be forwarded to you once it is finalized.

Please feel free to direct any questions you might have regarding the certificate to Jeffrey Gregg, the DEC project manager for this application. His direct line is (518) 402-9155.

Sincerely,

William R. Adriance
Chief Permit Administrator

cc:  J. Kerrigan, FERC
     H. Firstencel, USACE
     M. Crawford, USACE
     R. Niver, USF&WS
     T. Field, Millennium
     T. West, West Firm

**401 Water Quality Certificate Conditions**
Millennium Pipeline Project – Phase I
DEC No. 0-9999-00055/00003
May 29, 2007

1. **General Conditions:**

    A.  The New York State Department of Environmental Conservation ("DEC") hereby certifies that the Millennium Pipeline Project ("Millennium" or "the Project") will not contravene effluent limitations or standards as provided for under Sections 301, 302, 303, 306, 307 and 401 of the Clean Water Act of 1977 (PL 95-217), provided that all of the conditions listed herein are met.

    B.  All activities authorized by this Certificate must be conducted in compliance with the following documents, including approved document updates or modifications:

    - The Federal Energy Regulatory Commission's ("FERC") December 21, 2006 Order issuing the certificate for the Millennium Pipeline Project, to the extent that the Order pertains to Millennium's compliance with New York State Water Quality Standards necessary and appropriate for issuance of and compliance with this Certificate;

    - FERC's *"Wetland and Waterbody Construction and Mitigation Procedures"* and *"Upland Erosion Control, Revegetation, and Maintenance Plan"* (January 17, 2003);

    - Millennium's "Approved for Construction" Construction Alignment Sheets ("CAS"), March 1, 2007;

    - Millennium's Environmental Construction Standards ("ECS") May 7, 2007, which incorporate FERC's *"Wetland and Waterbody Construction and Mitigation Procedures"*;

    - Millennium's site-specific plans for major river crossings and other particular water resource crossings containing environmentally sensitive features, as approved by the FERC, the DEC, and the U.S. Army Corps of Engineers ("USACE"), including *"Environmental Management and Construction Plan for 2007 Major Waterbodies"*, April 17, 2007, and *"Site Specific Construction Plans for 2008 Major Waterbody Crossings"*, March 2007;

    - Millennium's wetlands and waterbodies crossing tables found in *"Wetlands Affected by Project"*, April 14, 2007, and *"Waterbodies Affected by Project"*, May 15, 2007;

    - Millennium's (from Columbia Gas Transmission Company) *"Hydrostatic Testing"*, 11/10/05; and

- Millennium's *"Contingency Plan for Inadvertent Releases of Drilling Fluids During HDD Pipeline Installations"*, April 17, 2007;

C. The conditions of this 401 Water Quality Certificate shall take precedent over and supercede any conflicting or less stringent provision included in the documents listed above in condition 1.B.

D. Millennium shall employ best management practices (BMPs), consistent with the FERC Order approving the Millennium Project and the procedures contained in Millennium's plans and specifications (including Millennium's CAS, ECS, and materials contained in Millennium's application to the DEC and USACE) to control discharges incidental to the construction of the pipeline, including to stormwater, groundwater, and surface waters, so as to meet water quality standards.

E. Millennium shall provide advance notice to the DEC of the construction activities planned for each of the anticipated Project construction seasons (including pipe installation activities in 2007 and 2008, and restoration work in 2009). At least five (5) working days prior to the commencement of on-right-of-way construction in any year, Millennium will provide notification (via e-mail or FAX) to the DEC personnel listed in Appendix A of this Certificate. These personnel will also be given access to the Web-based Project construction status program. This reporting program will consist of a dedicated, Project-specific Internet site, which will be developed and maintained by an independent (third-party) environmental compliance monitoring firm. The site will be updated daily to include current construction progress reports and will contain a schedule (posted weekly) of planned stream and wetland crossings.

F. After the completion of construction[1], Millennium shall provide to the DEC, as built drawings and survey construction notes for all waterbody (stream and wetland) crossings.

G. Millennium shall submit to the DEC for review and approval a final *Third-Party Compliance Monitoring Plan* within 60 days of the effective date of this 401 Water Quality Certificate. The *Third-Party Compliance Monitoring Plan* shall detail the responsibilities of and procedures to be implemented by an independent firm with appropriate experienced staff that will be retained by Millennium to monitor compliance for DEC and other agencies with the regulatory approvals issued for the construction of the Project. This certification includes and incorporates the provisions of the *Third-Party Compliance Monitoring Plan* dated March 16, 2007, to the extent that the Plan pertains to Millennium's compliance with New York State Water Quality Standards necessary and appropriate for issuance and compliance with this Certification.

---

[1] "Construction" is herein defined as not only the installation of the pipeline, but also the preparation work of marking, clearing and grubbing and subsequent activities that will be required to restore the right-of-way and other work sites. Such restoration work is expected to extend to the season beyond the in-service date of the pipeline.

  G.1 Complete all contractual requirements to assure that the third-party Compliance Manager and Compliance Monitors for each construction spread are in place approximately one month prior to the commencement of construction and available to implement the provisions of the *Third-Party Compliance Monitoring Plan*

  G.2 Assure that the third-party Compliance Monitors and the Compliance Manager have received Project-specific environmental training.

H. Millennium shall submit to the DEC for review and approval an *Environmental Training Plan* for the Project prior to the start of construction that:

  H.1 Describes the approach that will be used to convey to Project construction personnel and construction contractors all of the environmental protection measures required pursuant to this 401 Water Quality Certificate, as well as other Project certificates, approvals, plans, and specifications.

  H.2 Details the provisions that Millennium will make to ensure that its construction staff, construction contractors, subcontractors, environmental inspectors, and third-party compliance monitors complete the environmental training program so that they are fully prepared to implement all environmental protection aspects of the Project prior to the start of construction.

  H.3 Provides a mechanism for providing such training to the DEC staff listed in Appendix A of this Certificate.

I. Millennium shall be responsible for installing and maintaining erosion control devices and for construction work in environmentally sensitive areas, including wetlands and steams. Millennium shall also maintain the environmental protection equipment and staff necessary to respond in the event that unforeseen situations are encountered during stream or wetland crossings and construction on steep slopes.

J. Millennium shall perform the crossing of the Mongaup River / Rio Reservoir (Class B(T), MP 329.9) using an open cut method as specified in the FERC certificate. The crossing shall be timed to coincide with a reservoir draw-down period, between August 1 and September 15. A minimum water surface elevation of 805 feet MSL shall be maintained during construction, and a base flow of 100 cfs shall be continuously maintained and verified daily in the bypass and downstream reaches of the Rio Reservoir. Millennium shall submit for DEC review and approval, a signed agreement with Alliance Energy Renewables, L.L.C. ("AER NY-Gen"), owner of the hydro-electric generating facility upstream of the Mongaup River / Rio Reservoir pipeline crossing, documenting the scheduled drawdown. The agreement must include a commitment from AER NY-Gen to reduce flow to the minimum allowed under its FERC license to operate the facility for the full duration of Millennium's construction activities across the Mongaup. Any proposed changes to this condition must be approved in advance by DEC.

    K.    Millennium shall restore all waterbody crossings affected by the construction of the project in accordance with the related plans and specifications identified in condition 1.B. above. Millennium shall conduct all necessary pre-construction longitudinal surveys in order to restore pre-existing contours at these locations.

    L.    Millennium shall submit to DEC 30 days prior to start of construction a critical path chart that shows the schedule for providing all of the submittals required by this Certificate and that illustrates the general construction activities (work locations) anticipated for 2007, 2008, and 2009.

2. **Prior to the start of construction in any year, Millennium shall:**

    A. File with the DEC the current set of Construction Alignment Sheets (CAS) at a scale not smaller than 1:6,000 showing station positions and depicting all of the work areas involved in that season's pipeline construction. Any changes in the location of the Project facilities or construction procedures for waterbody crossings that differ from those at the time of the issuance of this 401 Water Quality Certificate and that could in any way affect streams, wetlands, or rare, threatened and endangered species must be highlighted on the final drawings. Any changes that required DEC approval or modification of this certificate shall be noted in the transmitting document.

    B. Install along the right-of-way clearly legible signs to identify the boundaries of all environmentally sensitive areas. An environmentally sensitive area could be a wetland, stream, protected habitat or species location, or other area that would require restrictive construction techniques or activities. Such signs shall be readable from a distance of approximately 30 feet, and shall designate areas such as "25-foot non-grading stream buffer boundary", or "regulated wetland boundary", or "environmentally sensitive area." Signs should avoid specifically naming any rare, threatened or endangered species or related habitat.

    C. Implement the threatened and endangered species management mitigation procedures as specified in the FERC certificate and the draft Biological Assessment incorporated as part of the certificate, except as otherwise modified in final consultations with the U.S. Fish and Wildlife Service. Any subsequent mitigation requirements imposed by the U.S. Fish and Wildlife Service in that agency's review and finalization of the draft Biological Assessment shall take precedence over the procedures contained in the FERC certificate.

    D. Submit pre-clearing photographs of all waterbody crossings to DEC. Photographs of each crossing shall be taken from both sides of the stream to clearly show the existing conditions at the location of the ROW crossing.

3. **During project construction:**

    A. Millennium shall not allow any equipment or materials (including fill, construction materials, or debris) to be deposited, placed, or stored in any waterbody except as

specifically authorized by this Certificate.

B. Millennium shall direct its construction contractors to take appropriate measures while construction is in progress to prevent the release of oil, lubricants, and any other potential pollutants into any waterbody. No equipment servicing or maintenance shall occur and no petroleum products shall be stored within 100 feet of any waterbody.

C. Millennium shall require all contractors performing waterbody crossings to have spill response materials available at the crossing site. Millennium field personnel and Millennium's contractors must be trained in spill response procedures, including the deployment and maintenance of spill response materials. Millennium shall promptly collect and dispose of any spilled materials or in-stream oily material observed during pipeline construction at a facility approved by DEC.

D. Pursuant to the procedures specified in the Environmental Construction Standards (ECS) Millennium shall limit initial grading within 25 feet of the edge of a watercourse to only that area required to install the construction equipment crossing and any associated temporary work space.

E. During the performance of any waterbody crossing using horizontal direction drilling (HDD), Millennium shall require its contractors to monitor the use of drilling fluid (bentonite) and, in the event of a detected release of fluid, shall implement the procedures specified in the Contingency Plan for Inadvertent Releases referenced in condition 1.B. above. For any release occurring in a waterbody Millennium shall immediately notify the DEC and the Third-Party Monitor of details of the release and the course of action it recommends taking. Disposal of any drilling fluids shall be at an approved, upland site.

F. To avoid the potential for erosion and sedimentation into waterbodies from upland areas along the right-of-way or other designated construction work areas (e.g., access roads, staging areas), Millennium shall implement the erosion control and environmental protection measures approved by FERC (including the FERC "Upland Erosion Control, Revegetation and Maintenance Plan", Project-specific FERC Mitigation Measures, Millennium ECS, Millennium CAS, any approved site-specific plans, and BMPs as defined for the Project). Any excess material from stream trenching shall be removed to an approved upland area.

G. Millennium shall utilize temporary equipment bridges as per FERC procedures for all streams with flow at the time of the proposed crossing. Only crossings for clearing equipment and equipment necessary for installation of equipment bridges may be conducted prior to bridge installation, and one time only for each of those. A temporary bridge shall consist of equipment pads and culvert(s), clean rock fill and culvert(s), or a flexi-float or portable bridge. Culverts must be sized to accommodate stream flows. All temporary bridges shall be constructed so as to prevent soils or silt laden sediment from entering the stream channel. All bridges must be constructed so

as to carry the weight of all equipment crossing the structure without failure. All bridges shall be installed and removed within the timing restrictions associated with the water use classification as listed in Millennium's *"Waterbodies Affected by Project"*. This condition applies to all flowing streams except the following:

Chenango River
Susquehanna River
West Branch Delaware River
East Branch Delaware River
Tributary of Calicoon Creek (S-SU-019)
Tributary of Calicoon Creek (S-SU-021)
Tributary of Mitchell Pond Brook (S-SU-028)
Wallkill River
Drainage Ditch to Pochuck Creek (S-OR-028)
Wheeler Creek
Tributary of Greenwood Lake (S-OR-060)
Indian Kill Reservoir
Ramapo River

H. With the exception of the areas required for temporary bridges and access that must be maintained for construction equipment crossings, within 24 hours of installing the pipeline and backfilling the trench across streams, Millennium shall restore stream beds to pre-existing contours and rough grade stream banks and adjacent areas to a distance of 50 feet from edge of the stream and install siltation and erosion control measures and conduct temporary seeding and mulching. If site-specific conditions or inclement weather do not allow such restoration within this 24-hour period, Millennium's Environmental Inspector shall document to the reasons for the delay, the temporary stabilization measures taken to minimize adverse effects, and the scheduled and actual completion of the work. Such documentation shall be provided in the Environmental Inspector's daily report and conveyed to the Third-Party Compliance Monitors.

I. Where restoration at waterbody crossings requires planting perennial species (seed mixes or live plantings), Millennium shall use species native to the local area as much as possible. All restoration of crossings of state designated fishery streams and other streams where overhanging woody vegetation would be removed shall be restored by plantings with native seed mixes and woody species to restore stream-shading conditions within a 25 foot riparian buffer.

J. With the exception of temporary access roads, within 48 hours of backfilling the trench, Millennium shall restore wetland crossing areas to pre-existing contours and rough grade to a distance of 100 feet from the delineated federal or state designated wetland boundary and install siltation and erosion control measures. If site-specific conditions or inclement weather do not allow such restoration within this 48-hour period, Millennium's Environmental Inspector shall document the reasons for the

delay, the temporary stabilization measures taken to minimize adverse effects, and the scheduled and actual completion of the work. Such documentation shall be provided in the Environmental Inspector's daily report and conveyed to the Third-Party Compliance Monitors.

K. Millennium shall perform hydrostatic test water withdrawal and discharge only from waterbodies approved by the FERC, DEC, and USACE. Test water discharge points will be the source waterbody for every test. When a stream is used as a water source, withdrawal shall not cause the flow of the stream to fall below the following seasonal thresholds: (1) from April 1 to September 30, either the lowest median monthly flow (for a gauged location) or 0.5 cubic feet per second per square mile of drainage area (for an ungauged location); and (2) From October 1 to March 31, either the lowest median monthly flow (for a gauged location) or 1.0 cubic feet per second per square mile of drainage area (for an ungauged location). Procedures shall be instituted and construction equipment and techniques managed to avoid or reduce impingement or entrainment of fish. This shall include, but not be limited to, locating the intake well above the bottom of the stream, positioning the intake in such a manner to minimize fish presence (e.g. facing downstream), and incorporating appropriately sized screening or filtering element (100 mesh or finer). Intakes shall be located away from any known rare, threatened or endangered species habitats.

L. Millennium shall monitor the status of all open cut (dry or wet) stream crossings while construction activities are underway until the crossing has been completed and the stream and stream banks have been restored. In the event of any potential or actual failure of the crossing, Millennium must have adequate staff and equipment available to take necessary steps to prevent or avoid adverse environmental impacts.

M. At any stream crossings that are potentially navigable, Millennium shall provide notice of construction work and provide for safe passage or portage of navigational boaters or canoeists during the installation of the pipeline. Such safety measures shall include conspicuous warning signs posted at least 100 feet upstream of the crossing and at upstream boat launches.

N. Millennium shall implement the erosion and sedimentation control measures for trench de-watering activities as contained in the construction procedures approved by FERC (including the FERC standard procedures, project-specific FERC Mitigation Measures, Millennium ECS, Millennium CAS, BMPs, and any approved site-specific crossing plans). Trench dewatering (either on or off the construction work area) shall be performed in a manner to minimize soil erosion and does not result in silt-laden water flowing into any wetland or waterbody. Adequate retention time shall be provided for all dewatering structures to allow settling and removal of suspended solids in the water. Sediment that accumulates in dewatering structures shall be properly removed and disposed of in approved upland areas, and the dewatering structures (including any wetland filter bags) shall be removed and properly disposed of as soon as practical after the completion of the restoration activities.

    O. On each construction spread, the Third-Party Compliance Monitor, representatives of the construction contractor, Millennium Environmental Inspectors, and other Millennium field personnel (as appropriate) shall confer during the week prior to the scheduled commencement of any open cut wet trench stream crossing to confirm the specific crossing methods to be used by the contractor.

    P. During trench backfill in any coldwater fisheries streams (class C(T) or higher), Millennium shall substitute clean gravel or native cobbles in the final 1-foot of fill over the backfilled trench.

    Q. Millennium shall remove and properly dispose of all temporary erosion control measures once restoration is determined complete. Only biodegradable matting and netting may be left permanently in place.

    R. Post-pipeline installation right-of-way monitoring (and if necessary further restoration), as well as long-term right-of-way maintenance activities will emphasize the preservation and enhancement of the environment and will be performed pursuant to the schedule and procedures contained in Millennium's ECS (Section VI). No herbicides shall be used in right-of-way maintenance activities. Millennium shall inspect stream crossing locations more frequently if seasonal high water events "overtop" the restored stream banks at the crossing location. The success of restoration shall be noted after each inspection and any damage that threatens the integrity of the stream bank shall be immediately repaired. All inspections shall be documented with monitoring reports and photographs.

### 4. Site specific conditions:

    A. Prior to the construction of the Nanticoke and Owego Creek crossings, Millennium shall submit for approval its plans for restorative work on the severe erosion areas associated with those waterbodies, as described in the FERC Order (at paragraph 273).

    B. Prior to the construction of the Wheeler Creek (pond) crossing, Millennium shall submit for approval its plan for controlling sediment discharge at the outlet of this waterbody.

    C. Millennium shall submit for approval site specific plans for completing the crossing of Halfway Brook and its associated wetlands. The plans shall consider methods for isolating the work zone, and options for equipment to be used. Plans shall include procedures for lowering water elevations, and stockpiling of tussock vegetation for re-use. The plans shall include information on existing stream and wetland contours and water depths, restoration details, and proposed commencement and completion dates. The plans must be developed in conjunction with the Corps of Engineers, NYSDEC, and the Upper Susquehanna Coalition, and be submitted by September 30, 2007. No work may be undertaken associated with this crossing until the plans have been approved by the DEC.

**5. Standard Permittee Notifications:**

  A. The permittee expressly agrees to indemnify and hold harmless the Department of Environmental Conservation, its representatives, employees, and agents for all claims, suite, actions, and damages, to the extent attributable to the permittee's acts or omissions in connection with the permittee's undertaking of activities in connection with, or operation and maintenance of, the facility or facilities authorized by the permit whether in compliance or not in compliance with the terms and conditions of the permit. This indemnification does not extend to any claims, suits, actions, or damages to the extent attributable to DEC's own negligent or intentional acts or omissions, or to any claims, suits, or actions naming the DEC and arising under Article 78 of the New York Civil Practice Laws and Rules or any citizen suit or civil rights provision under federal or state laws.

  B. The permittee is responsible for informing its independent contractors, employees, agents and assigns of their responsibility to comply with this permit, including all special conditions while acting as the permittee's agent with respect to the permitted activities, and such persons shall be subject to the same sanctions for violations of the Environmental Conservation Law as those prescribed for the permittee.

  C. The permittee is responsible for obtaining any other permits, approvals, lands, easements and rights-of-way that may be required to carry out the activities that are authorized by this permit.

  D. This permit does not convey to the permittee any right to trespass upon the lands or interfere with the riparian rights of others in order to perform the permitted work nor does it authorize the impairment of any rights, title, or interest in real or personal property held or vested in a person not a party to the permit.

**6. Standard Waterbody Related Conditions:**

  A. The State of New York shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the State for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage.

  B. If upon the expiration or revocation of this permit, the project hereby authorized has not been completed, the applicant shall, without expense to the State, and to such extent and in such time and manner as the DEC may require, remove all or any portion of the uncompleted structure or fill and restore the site to its former condition. No claim shall be made against the State of New York on account of any such removal or alteration.

  C. If future operations by the State of New York require an alteration in the position of the structure or work herein authorized, or if, in the opinion of the DEC it shall cause

unreasonable obstruction to the free navigation of said waters or flood flows or endanger the health, safety or welfare of the people of the State, or cause loss or destruction of the natural resources of the State, the owner may be ordered by the Department to remove or alter the structural work, obstructions, or hazards caused thereby without expense to the State, and if, upon the expiration or revocation of this permit, the structure, fill, excavation, or other modification of the watercourse hereby authorized shall not be completed, the owners, shall, without expense to the State, and to such extent and in such time and manner as the DEC may require, remove all or any portion of the uncompleted structure or fill and restore to its former condition the navigable and flood capacity of the watercourse. No claim shall be made against the State of New York on account of any such removal or alteration.

Appendix A
DEC Contacts

(To be finalized and provided later)