**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MILLENNIUM PIPELINE COMPANY, L.L.C.,

              *Plaintiff*,

-vs-

CERTAIN TEMPORARY EASEMENTS IN 322
SLEEPY VALLEY ROAD, TOWN OF WARWICK,
ORANGE COUNTY, NEW YORK, S.B.L. No. 31-1-
17, BREAKAWAY TRAILS, INC., John Doe, et al.,
and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (NO NUMBER) DISTILLERY
ROAD, TOWN OF WARWICK, ORANGE
COUNTY, NEW YORK, S.B.L. No. 29-1-21,
GEORGE BURKERT AND ANNA BURKERT, John
Doe, et al., and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (NO NUMBER) ROUTE 42,
TOWN OF FORESTBURG, SULLIVAN COUNTY,
NEW YORK, S.B.L. No. 39-1-11, ADELIA M.
MASTERS, John Doe, et al., and Unknown Owners,

And

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN 65 LIBERTY CORNERS ROAD,
a/k/a 61 LIBERTY CORNERS ROAD, TOWN OF
WARWICK, ORANGE COUNTY, NEW YORK,
S.B.L. No. 11-1-21.2, DOUGLAS A. PATZELT AND
LAUREN PATZELT, John Doe, et al., and Unknown
Owners,

And



Civil Action No.
07 CV 5815 (CM) (MDF)

PLAINTIFF'S REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS
MOTION FOR A
PRELIMINARY INJUNCTION
(AS LIMITED TO THE
BREAKAWAY TRAILS, INC.
PROPERTY)

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (No Number) Route 17A, TOWN
OF TUXEDO, ORANGE COUNTY, NEW YORK,
S.B.L. No. 1-1-34.2, SWISS NORTH AMERICAN
PROPERTIES - USA, LLC, John Doe, et al., and
Unknown Owners,

                                         *Defendants.*

## PRELIMINARY STATEMENT

Plaintiff/condemnor Millennium Pipeline Company, L.L.C. ("Millennium") submits this reply memorandum of law in opposition to the papers submitted by property owner Breakaway Trails, Inc. ("Breakaway"), dated July 12, 2007 and in further support of Millennium's motion for a preliminary injunction pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), authorizing it to immediately enter upon the real property owned by Breakaway, known as 322 Sleepy Valley Road, Town of Warwick, County of Orange, New York, S.B.L. No. 31-1-17 (the "Breakaway Property") for the purpose of commencing work associated with the construction of a natural gas pipeline to effectuate a public project approved by the Federal Energy Regulatory Commission ("FERC") (the "Project").

## STATEMENT OF FACTS

The facts underlying Millennium's entitlement to relief are stated with particularity in Millennium's original motion, consisting of the Affidavit of Millennium's counsel, Darryl J. Colosi, sworn to on June 18, 2007 ("June 18, 2007 Colosi Affidavit") and Memorandum of Law, dated June 18, 2007 ("June 18, 2007 Memorandum"). While such facts are repeated below, as necessary, most of the facts stated below pertain to events that occurred during the parties' appearance before the Court on June 27, 2007 and forward.

BULIB01\706993\1                                         1

As this Court is aware, counsel for the parties first appeared before the Court on June 27, 2007, in connection with Millennium's Complaint to acquire a temporary easement in the Breakaway Property and motion to immediately enter upon such Property (and four other properties) to facilitate the Project. At that time, counsel for Millennium (Darryl J. Colosi) reported to the Court that counsel for Breakaway (Alan Lipman) had a requested a two week adjournment to attempt to settle the action as it pertains to Breakaway. Transcript of June 27, 2007 Court proceedings ("Transcript"), p. 8, Lines 7-12. Breakaway is represented by additional attorney Neil Frishberg and Mr. Frishberg appeared before this Court on June 27, 2007.

In response to what Millennium believed was a joint request for a brief adjournment, counsel for Breakaway (Mr. Frishberg) promptly began to argue the merits of the case, most notably that Millennium was not entitled to a preliminary injunction. Counsel for Millennium responded by seeking to withdraw Millennium's request for an adjournment and requesting that the Court immediately rule over the application for a preliminary injunction. Transcript, pp. 8-9. The Court denied counsel's request, but in doing so made it clear that Millennium possessed the power to acquire the required temporary easement in the Breakaway Property, that Breakaway could not stop the Project and that a bond would issue in an amount determined by the Court to permit Millennium to immediately enter upon the Breakaway Property. In this regard, the Court (Hon. Colleen McMahon, USDJ) stated the following:

> JUDGE McMAHON: Here's what I would suggest to you, Mr. Colosi. I would suggest to you that you not withdraw your consent to the adjournment, because it may be that Mr. Frishberg has to acquaint his client with the facts of life, which is that you're going to get your bond, and the question is how much.

Transcript, pp. 9-10.

The Court granted the two week adjournment and ordered that the parties appear before Magistrate Judge Mark D. Fox on July 13, 2007 to report about whether they had settled the matter or, if not, whether they could agree on the amount of a bond. Notwithstanding the Court's order, on July 13, 2007, counsel for Breakaway appeared with papers in opposition to Millennium's request for a preliminary injunction. For the reasons stated in Millennium's original motion papers and below, the Court should grant the motion and proceed with the security hearing scheduled for July 30, 2007. Breakaway has not presented any reason, factual or legal, as to why Millennium should not be permitted to proceed with its Project at the Breakaway Property.

## ARGUMENT

### THE COURT SHOULD GRANT MILLENNIUM'S MOTION TO IMMEDIATELY ENTER UPON THE BREAKAWAY PROPERTY

Breakaway has identified the following three reasons for opposing Millennium's request for a preliminary injunction that would allow Millennium to immediately enter upon the Breakaway Property: that Millennium does not possess an order of condemnation; that Millennium has not demonstrated irreparable harm; and that Millennium has failed to fairly negotiate with Breakaway and adequately financially protect Breakaway for the pre-construction and construction work that Millennium seeks to perform at the Breakaway Property. These reasons are factually and legally wrong and the Court should disregard them. Millennium disposes of them below *in seriatim.*

A.  **Millennium Has Followed the Statutory Framework Necessary to Obtain Immediate Entry onto the Breakaway Property in All Respects**

In its June 18, 2007 Memorandum, Millennium laid out the statutory framework applicable to eminent domain actions involving pipelines. Millennium demonstrated that as the holder of a Certificate and Order granted by the Federal Energy Regulatory Commission ("FERC") over the Project on December 21, 2006 ("FERC Order"), it possesses the power of eminent domain pursuant to the Natural Gas Act ("NGA") to acquire an easement in the Breakaway Property for the Project. Millennium also acknowledged that the Federal Rule of Civil Procedure governing eminent domain actions (71A) does not authorize condemnors, like Millennium, to immediately enter upon real property upon the filing of a Complaint pursuant to Rule 71A. Rather, Rule 71A provides that the condemnor may not enter upon the targeted property until the Court determines the property's value by a valuation trial and the condemnor pays such value to the property owner. Millennium further explained that pipeline company condemnors typically cannot wait for the court to conduct numerous valuation trials because pipeline projects often involve hundreds of properties over many miles. Millennium further explained that for this reason,

> a body of law has developed whereby the district courts have exercised their inherent equitable powers to authorize holders of certificates of public convenience and necessity to immediately enter upon private property for pipeline construction. FRCP 71A contains no language prohibiting a condemnor from pursuing available procedures to immediately enter upon private property prior to the entry of the final judgment over just compensation. Indeed, the Advisory Committee that drafted FRCP 71A was well aware of such procedures but decided against formally including them in FRCP 71A because "the procedure . . . being followed [to allow immediate possession] seems to be giving no trouble, and to draft a rule to fit all the statutes on the subject might create confusion." FRCP 71A Advisory Committee's Supplementary Report, 11 F.R.D., 222, 228 (March 1951).

June 18, 2007 Memorandum, p. 8; *see also*, June 18, 2007 Colosi Affidavit, ¶¶ 7, 12-13, where Millennium delineated the reasons why the Complaint was valid in all respects and requested that the Court grant it.

Indeed, this Court acknowledged the statutory scheme that Millennium is seeking to follow herein when Judge McMahon stated the following at the June 27, 2007 Court proceedings:

> JUDGE McMAHON: But it may be that Mr. Frishberg – this is an unusual area of the law. It's governed by a kind of unique statutory scheme. I certainly wasn't familiar with it until the first time you all came in. It's entirely possible that Mr. Frishberg's client is not familiar with it because it's not like any of the statutory schemes that he probably deals with in his development dealings with the State of New York.
>
> So, if I were you [addressing Millennium's counsel], I would not withdraw my consent to the two-week adjournment. I would give Mr. Frishberg an opportunity to acquaint his client with the lay of the land. Okay? I think I would do that.

Transcript, p. 10.

Breakaway has ignored the several cases that Millennium has cited in its June 18, 2007 Memorandum, which aptly describe the statutory scheme and lend support to Millennium's request for a preliminary injunction. Instead, Breakaway relies on *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998), which held that the pipeline company condemnor before it,

> cannot gain immediate possession of the property through a preliminary injunction because it did not present an argument grounded in substantive law establishing a preexisting entitlement to the property.

*Id.*, at 472. *Northern Border* further held that a pipeline company condemnor has no right to the land immediately, but must wait until "the conclusion of the normal eminent domain process." *Id.*, at 471.

This Court should not follow the reasoning of the 7th Circuit in *Northern Border* for these reasons: it represents bad law that defies common sense as well as the vast majority of the law that developed after it and, in any event, in its original motion Millennium did "present an argument grounded in substantive law establishing a preexisting entitlement to the [Breakaway] property."

Millennium is aware of one court that criticized *Northern Border* and three – including two district courts in the 7th Circuit – that have distinguished it. *See Northwest Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way Easement*, 197 F.Supp.2d 1241 (E.D. Wash. 2002); *East Tennessee Natural Company Co., v. Sage*, 361 F.3d 808 (4th Cir. 2004); *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 210 F.Supp.2d 976 (N.D. Ill. 2002) and *Northern Border Pipeline Co., v. 64.111 Acres of Land*, 125 F.Supp. 299 (N.D. Ill. 2000).

In *Northwest Pipeline*, the court criticized *Northern Border*, finding that such decision is at odds with the standards applicable to preliminary injunctions,

> inasmuch as it would require the plaintiff not to show a *likelihood* of success but rather to have *already* succeeded on the merits of its claimed right of condemnation.

*Id.*, 197 F.Supp. at 1245 (Emphasis in original). The court went on to describe *Northern Border's* "categorical approach" as producing "an absurd result." *Id.*

The courts in each of *Sage, Guardian Pipeline* and *Northern Border Pipeline Co., v. 64.111 Acres of Land* have interpreted *Northern Border* to <u>not</u> require the ultimate final order of condemnation following the court-determined award of just compensation as a pre-requisite to

the immediate entry onto the property, as producing the absurd result described in *Northwest Pipeline*. Rather, *Sage, Guardian Pipeline* and *Northern Border Pipeline Co., v. 64.111 Acres of Land* have interpreted *Northern Border* as requiring the condemnor merely to seek an interlocutory order confirming its right to condemn the property.

Such is exactly how Millennium has proceeded in the instant case; i.e., Millennium has sought an interlocutory order confirming its right to condemn a temporary construction easement in the Breakaway Property as the basis for the granting of a preliminary injunction permitting it to immediately enter upon such Property. In this regard, see Point I of Millennium's the June 18, 2007 Memorandum, entitled, "Millennium's Complaint Should Be Granted." After describing the statutory framework, including that Millennium is the holder of the FERC Order and that Breakaway cannot challenge such Order in this Court, Millennium went on to request that this Court grant the Complaint as a pre-requisite to the granting of the motion for a preliminary injunction. In this regard, Millennium concluded Point I of its June 18, 2007 Memorandum, as follows:

> The Complaint clearly sets forth the authority for the taking, the use for which the easements in the Subject Property [which includes the Breakaway Property] are to be taken, the identity of the Subject Property and the persons with an interest in those portions of the Property sought to be acquired as a permanent and/or temporary easements, and the Complaint otherwise complies with the Rule's pleading requirements [FRCP 71A(c)(1)-(2)] and all other requirements in all respects.
>
> The Court should grant the Complaint because the FERC has issued the Certificate authorizing the Project, Millennium is vested with the power of eminent domain pursuant to the NGA and Millennium's Complaint complies with FRCP 71A in all respects.

After having requested in Point I of its June 18, 2007 Memorandum that this Court grant Millennium's Complaint by determining that Millennium has the right to acquire an easement in

the Breakaway Property, Millennium proceeded to set forth the bases for preliminary injunctive relief in Point II of its Memorandum.

At the June 27, 2007 return date of this Court's Order to Show Cause granted in connection with Millennium's motion, this Court informed Breakaway of Millennium's right to acquire an easement in the Breakaway Property as follows:

> JUDGE McMAHON: Here's what I would suggest to you, Mr. Colosi [Millennium's counsel]. I would suggest to you that you not withdraw your consent to the adjournment, because it may be that Mr. Frishberg [Breakaway's counsel] has to acquaint his client with the facts of life, which is that you're going to get your bond, and the question is how much.

Transcript, pp. 9-10.

> JUDGE McMAHON: But it may be that Mr. Frishberg – this is an unusual area of the law. It's governed by a kind of unique statutory scheme. I certainly wasn't familiar with it until the first time you all came in. It's entirely possible that Mr. Frishberg's client is not familiar with it because it's not like any of the statutory schemes that he probably deals with in his development dealings with the State of New York.

Transcript, p. 10.

As counsel for Millennium reported to the Court and opposing counsel on June 27, 2007, this Court has already granted Millennium's Complaint in the Stone Industries matter (07-CV-2491), which Complaint and motion for preliminary injunctive relief are virtually identical to the Complaint and motion in the instant case against Breakaway Trails, *et. al.* This Court's Order in the Stone Industries matter, dated May 1, 2007, provides in relevant part, as follows:

> **ORDERED** that, based upon all counsels' agreement on the record at oral argument **and the Court's independent finding consistent therewith**, that so much of Plaintiff's Complaint, which seeks a temporary easement in the real property owned by Stone located at (no number) Torne Valley Road, Town of Ramapo, County of Rockland, State of New York, SBL No. 39.20-1-2, depicted on Exhibit 2 to the Complaint (the "Property"), is indisputably with

BULIB01\706993\1                                8

> merit and therefore unopposed, such relief is hereby finally granted in all respects, with the express recognition that the amount of just compensation to which Defendants are entitled for the temporary easement finally granted hereby will be determined at the trial of this action pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure ("FRCP"), in the event the parties are unable to agree on such amount; and it is further

(Emphasis added regarding "and the Court's independent finding consistent therewith").

In summary, Millennium has proceeded according to the established statutory framework that has developed to facilitate the timely, safe and environmentally responsible construction of pipeline projects that will cross hundreds of properties; Millennium has demonstrated that its Complaint in the instant matter should be granted; this Court granted the virtually identical Complaint in the related Stone Industries matter and Judge McMahon's language, as quoted above from June 27, 2007, does not appear to leave any doubt as to whether the Court granted Millennium's Complaint in the instant case. In the event the Court believes it did not grant such an order, then it should do so, as it did in the Stone Industries case.

**B.   Millennium Has Demonstrated Irreparable Harm**

As previously shown in the original motion papers, the instant Project involves the construction of a 182 mile pipeline through 1,478+/- properties and that much of such construction must be coordinated in a manner that maintains the uninterrupted supply of gas to customers currently receiving gas by a pipeline that the new Millennium pipeline will replace, and that all of such work and pre-construction work (including archeological, environmental and civil survey work at some parcels) must be completed in less than 2.5 years by December 31, 2009. Again, Millennium is merely seeking a **temporary** 25' construction easement and limited additional temporary work space at the Breakaway Property to replace an **existing pipeline** that burdens the Property and that defendant Breakaway knew or should of known about the existing

pipeline, easement and Millennium's right and intention to replace the existing pipeline when Breakaway purchased the Breakaway Property and sought to develop it as a subdivision.

In its June 18, 2007 Memorandum, Millennium identified the following cases, which held that, by definition, pipeline company condemnors will suffer irreparable harm where they are not permitted to immediately enter upon property to begin construction of projects of a certain size while under a FERC ordered deadline to complete them. The projects at issue in each case were dwarfed by the instant Millennium Project, as follows: *Sage*, 361 F.3d at 829 (proposed gas pipeline measured approximately 94 miles in length); *Guardian Pipeline*, 210 F.Supp.2d at 977 (proposed pipeline corridor extended approximately 85 miles, from Joliet, Illinois to the Wisconsin border, and through four counties); *East Tennessee Natural Gas, LLC v. 1.28 Acres in Smyth County, Virginia*, 2006 WL 1133874 (W.D. Va. Apr. 26, 2006) (proposed gas pipeline measured 32 miles in length and six property owners resisted the condemnor's motions for immediate possession).

The court in *Sage* surveyed the law applicable to the statutory scheme and identified eleven federal cases at 361 F.3d 827-828, where the courts granted the same type of preliminary injunctive relief that Millennium is seeking herein. More than half of such cases post-date *Northern Border* and, as already shown in Point IA above, *Sage* distinguishes *Northern Border*. Simply, the vast majority of the cases have approved the very same preliminary injunctive relief requested by Millennium herein.

In Millennium's accompanying Affidavit of Darryl J. Colosi, sworn to on July 16, 2007, Millennium provides additional detail regarding the provisions of the FERC Order and myriad of other factors that dictate how construction of the Project must be scheduled over the next few years and confirming that Millennium, not individual property owners, must make scheduling

determinations. *See* such Affidavit at ¶¶ 9-21. It is for similar reasons that the court in *Sage* aptly framed the issue and stated the basis for finding that the condemnor gas company would suffer irreparable harm by quoting the District Court below, as follows:

> [A]ny single parcel has the potential of holding up the entire project ... and to require ETNG [the condemnor] to build up to a parcel of land [it] does not possess, skip that parcel and then continue on the other side would prove wasteful and inefficient.

*Sage,* 361 F.3d at 829.

C.  **Breakaway Will Be Adequately Protected Through Millennium's Posting of a Court-Determined Bond**

Breakaway argues that Millennium has failed to adequately financially protect or offer to compensate Breakaway for pre-construction and construction work that it seeks to perform at the Breakaway Property. Both contentions are false and, even if true, they would not, as a matter of law, be grounds to deny Millennium's motion.

Millennium fully addressed these contentions in Point II(B)(3) and (4) of its June 18, 2007 Memorandum (pp. 12-16). In its prior Memorandum, Millennium explained that a property owner is fully protected where the condemnor deposits funds prior to immediately entering his or her property in an amount determined by the court. *East Tennessee Natural Gas, LLC,* WL 1133874 at *12; *Sage,* 361 F.3d at 824; *Northern Border Pipeline Co. v. 127.79 Acres of Land,* 520 F.Supp. 170 (DND 1981). Millennium also pointed out that such a deposit is required by the injunction provisions of FRCP 65(c). By ordering a security hearing according to the schedule set forth below (as directed by the Court on July 13, 2007), Breakaway cannot reasonably argue that it will not be fully protected:

- Parties must exchange expert reports by July 24, 2007 (in-hand to opposing counsel);

- Depositions of the experts to be conducted on July 27, 2007 (lasting no more than three hours per expert); and
- Security hearing to be conducted before Judge Fox on July 30, 2007.

Breakaway's contentions that Millennium failed to negotiatie in good faith are untrue. As detailed in its original motion papers, Millennium has been negotiating with Mozafar Rafizadeh, Breakaway's principle shareholder, for over the past two years. Such negotiations have included the following: (i) multiple telephone conferences with Mr. Rafizadeh or his attorney to explain the Project, its location and its impact on the Breakaway Property; (ii) at least one in-person meeting with Mr. Rafizadeh; (iii) Millennium mailed Mr. Rafizadeh a proposed easement agreement and map showing the location of the required temporary easement; (iv) Millennium retained appraisal consultants to appraise the potential damages to the Breakaway Property anticipated to be caused by the Project easement; and (v) without identifying the amount of the offer, Millennium made offers to Breakaway to purchase such easement for amounts that were many multiples of the $13,000 appraised value of the damages to the Breakaway Property. June 18, 2007 Colosi Affidavit, ¶25; *see also* July 16, 2007 Colosi Affidavit, ¶ 23.

Millennium valued the damages to the Breakaway Property in the amount of $13,000, based on the Breakaway Property not yet having received approval for its subdivision, because for almost all of the two-plus years that Millennium was negotiating with Breakaway, the subdivision was not approved. Millennium and its counsel did not become aware that Breakaway's proposed subdivision was approval until after Millennium filed this action on July 20, 2007. Accordingly, Millennium has requested that its appraiser re-evaluate the Breakaway Property in light of the subdivision approval. While the appraiser's work is on-going, he has

indicated that his estimate of damages to the Breakaway Property (as a now approved subdivision) may reach $100,000. July 16, 2007 Colosi Affidavit, ¶ 24.

It is Breakaway who has not bargained in good faith. The parties and the Court agreed to adjourn this action from June 27, 2007 to July 13, 2007 to permit Breakaway to retain an appraiser to appraise its Property and for the parties to report back to the Court regarding whether the matter had settled or, if not, the spread between the parties' respective appraised values. However, on July 13, 2007, counsel for Breakaway reported to the Court that Breakaway had yet to even retain an appraiser. Breakaway's failure to hire an appraiser as of July 13, 2007 is very troubling in light of the fact that Millennium has been seeking to purchase an easement from Breakaway since approximately March 2005 and in light of Judge Fox having scheduled a bond hearing for later this month at the conclusion of this Court's June 27, 2007 proceedings. July 16, 2007 Colosi Affidavit, ¶ 25

Rather than having retained an appraiser, Breakaway's papers speak about the number of homes Breakaway intends to build at its very newly approved subdivision and the costs and profits associated with such homes. There is no support for any of Breakaway's lofty projections, nor has construction started on any of the homes, nor has Breakaway submitted even a single contract of sale for a lot or home. Accordingly, it is Breakaway that has failed to negotiate in good faith and also failed to provide the Court with any meaningful information; such information being limited to best-case projections with no idea of timing or market absorption.

Of course, all of Breakaway's complaints regarding financial distress are red hearings. As previously shown, under the established statutory framework that Breakaway's counsel was supposed to explain to Breakaway, in providing it with the "facts of life" [see Transcript of this

Court's June 27, 2007 proceedings, p. 10, lines 2-3], Breakaway will have its day in this Court (on July 30, 2007) to establish as high a bond as possible to fully protect itself for the time Millennium requires to enter upon the Breakaway Property to facilitate the Project.

## CONCLUSION

For the foregoing reasons and as stated in Millennium's original motion papers, dated June 18, 2007, Millennium respectfully prays for this Court to grant an Order authorizing Millennium to enter upon the Breakaway Property immediately upon the Court's determination of the amount of security that Millennium will be required to post in favor of Breakaway and the other Defendants named in the Complaint with an interest in the Breakaway Property; that such determination be made as soon after the conclusion of the security hearing scheduled before the Court for July 30, 2007; that Breakaway's employees, agents, contractors and all other representatives be enjoined from interfering with such entry; and granting to Millennium such other and further relief as the Court deems fair and proper..

**DATED:**   July 16, 2007

HISCOCK & BARCLAY, LLP

By: _____
    Darryl J. Colosi DC 2929

*Attorneys for Plaintiff*
Millennium Pipeline Company, L.L.C.
Office and Post Office Address
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203-1414
Telephone: (716) 566-1553
Facsimile: (716) 846-1239
Electronic Mail: dcolosi@hiscockbarclay.com
Electronic Mail: mlansing@hiscockbarclay.com

Darryl J. Colosi
Mark D. Lansing
   *Of Counsel*