# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

**MILLENNIUM PIPELINE COMPANY, L.L.C.,**

*Plaintiff,*

–vs–

**CERTAIN TEMPORARY EASEMENTS IN 322
SLEEPY VALLEY ROAD, TOWN OF WARWICK,
ORANGE COUNTY, NEW YORK, S.B.L. No. 31-1-
17, BREAKAWAY TRAILS, INC.,** John Doe, et al.,
and Unknown Owners,

And

**CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (NO NUMBER) DISTILLERY
ROAD, TOWN OF WARWICK, ORANGE
COUNTY, NEW YORK, S.B.L. No. 29-1-21,
GEORGE BURKERT AND ANNA BURKERT,** John
Doe, et al., and Unknown Owners,

And

**CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (NO NUMBER) ROUTE 42,
TOWN OF FORESTBURG, SULLIVAN COUNTY,
NEW YORK, S.B.L. No. 39-1-11, ADELIA M.
MASTERS,** John Doe, et al., and Unknown Owners,

And

**CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN 65 LIBERTY CORNERS ROAD,
a/k/a 61 LIBERTY CORNERS ROAD, TOWN OF
WARWICK, ORANGE COUNTY, NEW YORK,
S.B.L. No. 11-1-21.2, DOUGLAS A. PATZELT AND
LAUREN PATZELT,** John Doe, et al., and Unknown
Owners,

And

---

Civil Action No.
07 CV 5815 (CM) (MDF)

**REPLY AFFIDAVIT OF
DARRYL J. COLOSI IN
SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY
INJUNCTION (AS LIMITED TO
THE BREAKAWAY TRAILS,
INC. PROPERTY)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

CERTAIN PERMANENT AND TEMPORARY
EASEMENTS IN (No Number) Route 17A, TOWN
OF TUXEDO, ORANGE COUNTY, NEW YORK,
S.B.L. No. 1-1-34.2, SWISS NORTH AMERICAN
PROPERTIES - USA, LLC, John Doe, et al., and
Unknown Owners,

*Defendants.*

STATE OF NEW YORK    )
    ) SS:
COUNTY OF ERIE    )

DARRYL J. COLOSI, being duly sworn, deposes and says:

1.    I am an attorney duly licensed to practice law before the courts of the State of New York and the United States District Court for the Southern District of New York. I am a member of the law firm of Hiscock & Barclay, LLP, attorneys for Plaintiff Millennium Pipeline Company, L.L.C. ("Millennium"). I am fully familiar with the facts and circumstances of this action and the statements made herein. The bases for all statements, including those made upon information and belief, are my review of certain of Millennium's books and records and my discussions with representatives of Millennium.

2.    I submit this Affidavit in reply and opposition to the papers submitted by Defendant Breakaway Trails, Inc. ("Breakaway") and in further support of Millennium's motion for an injunction, pursuant to Federal Rules of Civil Procedure ("FRCP") 65(a), permitting Millennium to immediately enter upon the real property owned by Breakaway, known as 322 Sleepy Valley Road, Town of Warwick, County of Orange, New York, S.B.L. No. 31-1-17 (the "Breakaway Property") for the purpose of commencing work associated with the construction of a natural gas pipeline to effectuate a public project approved by the Federal Energy Regulatory Commission ("FERC") (the "Project").

3.      Millennium's original motion papers consist of my Affidavit, sworn to on June 18, 2007 ("June 18, 2007 Affidavit") and Memorandum of Law, dated June 18, 2007 ("June 18, 2007 Memorandum").  I will endeavor to not repeat facts previously stated in my June 18, 2007 Affidavit.  The purpose of the instant Affidavit is to provide the Court with additional detail regarding Millennium's construction requirements and plans in light of the Project's scope and additional facts regarding Millennium's valuation of the Breakaway Property and negotiations with Breakaway.

4.      By way of reminder and to set the matter in the proper context, the Project involves Millennium's construction of a 182 mile pipeline through 1,478+/- properties in eight counties.  All of this work must be coordinated in such a way as to maintain uninterrupted gas service to the thousands of customers currently being serviced by Columbia Gas Transmission Corporation's ("Columbia") existing Line A-5 pipeline, which the Millennium pipeline will replace, and such work must be completed by no later than December 31, 2009 (less than 2.5 years from now) according to the Order issued by the FERC on December 21, 2006 ("FERC Order").

5.      In consideration of the sheer size of the Project and the requirement that all construction be completed by December 31, 2009, by definition, Millennium's inability to access properties according to its prerogative and schedule to commence and complete pre-construction and/or construction activities will result in irreparable harm to Millennium and the public at large in the event Millennium is unable to timely compete this massive Project. *See* June 18, 2007 Memorandum, Point II(B); *see also* Millennium's Reply Memorandum, dated July 16, 2007, Point B.

6.      By way of further reminder, Millennium already possesses a 50' wide permanent easement in the Breakaway Property and Breakaway knew or should have known when it purchased such Property about the existing pipeline that burdens the Property and that Millennium seeks to replace it.  Accordingly, Millennium is merely seeking a 25' **temporary** construction easement and other limited temporary work space, all of which will cease to exist once construction is completed.

7.      In its original motion papers, Millennium explained the statutory scheme surrounding pipeline federal eminent domain actions, including that pipeline condemnors are not permitted to enter upon the targeted property and devote it to the proposed public use until the Court determines the property's value and the condemnor pays such value to the owner. Accordingly, a body of case law has developed whereby a pipeline company condemnor will file a Complaint seeking to acquire the property (or, in this case, a temporary easement) and then instantly move for an injunction to immediately enter upon the property upon the posting of court-ordered security.

8.      Millennium has stated in its motion that it must access the Breakaway Property no later than October 1, 2007 to perform tree clearing and that Millennium intends to commence actual construction at the property in 2008. June 18, 2007 Colosi Affidavit, ¶20.  Breakaway has stated that Millennium's need to enter the Property is not imminent because Millennium does not need to access the Breakaway Property until October 1, 2007 and Breakaway claims that the Court would be able to complete the full-blown valuation trial before then.  While Millennium is less apt than Breakaway to speak for the Court and its calendar, Millennium reiterates that it will be crossing almost 1,500 parcels over the next (less than) 2.5 years and, in light of the opposition that Millennium has faced from Breakaway and other property owners as well as the security

hearings that Millennium anticipates may be required, Millennium views the commencement of the instant action as anything but premature.

9.     With respect to the tree clearing, the FERC has ordered that Millennium conduct such work at the Breakaway Property between October 1, 2007 and March 30, 2008. The FERC Order provides the following at condition 27 (p. 119):

> Millennium shall conduct tree clearing during the period of October 1 to March 30, to minimize the adverse affects on the Indiana bat in the areas of known bat activity, between MPs 346 and 363. Future maintenance activities that involve tree removal, pruning, or similar activities, shall be scheduled to occur between October 1 and March 30 to avoid disturbing roosting bats. Millennium shall employ the services of a qualified bat scientist to investigate trees and/or conduct other surveys as may be recommended by the FWS [US Fish and Wildlife] for the presence of Indiana bats if the removal of a limited number of trees is necessary between April 1 and September 30, to avoid a take of bats.

The Breakaway Property is located near milepost 358, which is within the area affected by this condition. The FERC Order is attached to Millennium's Complaint at Exhibit 1.

10.     Clearing the right-of-way is one of the first construction activities performed in constructing pipelines. As explained in the original motion papers, pipeline construction is a sequential - assembly line - type of activity. Once the clearing is complete, the contractor will move on to other construction activities including grading, ditching, stringing the pipe, welding, lowering-in the new pipeline, backfilling, and restoration. The construction crew moves along the pipeline right-of-way in an assembly line fashion completing these various activities.

11.     The total length of the proposed Millennium pipeline is 182 miles. Clearing will be performed by several clearing crews. Some portions of the Project have already been cleared in anticipation of installing about 12 miles of pipe in 2007. As noted above, approximately seventeen miles of clearing will take place after October 1, 2007 to minimize the adverse affects

to the Indiana bat. The remaining right-of-way clearing will take place as part of the initial activity associated with the 2008 pipeline construction work, which is scheduled to start in the spring of 2008.

12.     On June 22, 2007, the FERC issued a Notice to Proceed relative to approximately 12 miles of pipe (which does not include the Breakaway Property). Actual construction started on the Project on June 22, 2007, as soon as Millennium received the FERC Notice to Proceed. Millennium is planning to construct approximately twelve miles of pipe in 2007. Construction in 2007 has been limited to pipe availability, issuance of the June 22, 2007 FERC Notice to Proceed, and the need to maintain gas supplies to existing markets.

13.     The construction time period on the Millennium Project is limited to several factors, two of the biggest being, (i) maintaining gas supplies to existing markets as the pipeline is constructed and, (ii) complying with environmental construction timing windows that have been imposed on the Project.

14.     For the most part, the Millennium pipeline is using an existing and active pipeline right-of-way to construct its facilities. The pipeline that is being replaced is also being used to serve existing local distribution companies like Orange and Rockland Utilities, Inc. In order to maintain gas service, only one section of piping can be taken out at a time. The time period when these sections can be taken out is usually in the late spring, summer, and fall, when the winter heating demand for natural gas is lower.

15.     In addition to market restrictions, there are also environmental timing windows imposed on the Project to protect sensitive land features or endangered species. In particular, Millennium is required by the New York Department of Environmental Conservation to minimize the possibility of construction interfering with fish migration and spawning. As a

result, Millennium is limited to performing in-stream construction in coldwater fisheries between June 1 to September 30, and coolwater and warmwater fisheries considered significant by the state, between June 1 and November 30, unless other timing windows are permitted by federal or state agencies.

16.    Breakaway has inquired about whether Millennium could not minimize disturbance at the Breakaway Property by constructing the pipeline at such Property by year-end 2007. Millennium, however, cannot construct across the Breakaway Property by year-end 2007 because Millennium has not received a required FERC Notice to Proceed for this section of the Project. In addition, Millennium has already made arrangements to take other pipeline sections out of service in 2007. Millennium cannot take the pipeline section across the Breakaway Property out of service at the same time the other 2007 work is going on and still maintain gas service to the markets served by the pipeline.

17.    There are approximately 170 miles of pipeline that will be constructed in 2008. The construction is broken up into five different segments or spreads. There will be multiple construction crews working on different segments at the same time in 2008. In some cases, different segments can be worked on at the same time. In other segments, one segment will have to wait until another segment is complete in order to maintain gas service to the markets.

18.    Millennium's construction schedule is to have the entire pipeline Project in-service by November 1, 2008, in order to meet customer demands for the gas supply. Millennium's customers include Consolidated Edison, Keyspan, Columbia Gas, and Central Hudson.

19.    Millennium is required to comply with permit conditions and requirements from several agencies including FERC, US Army Corps of Engineers, US. Fish and Wildlife, New

York State Historic Preservation Office, and New York Department of Environmental Conservation. All the conditions and requirements imposed on the Project by these agencies must be factored into the construction schedule and construction sequence.

20.    There is a systematic process of constructing pipelines. One construction activity follows another in an assembly line type process. The typical sequence is that, once all permits and land rights have been obtained, the construction work area on right-of-way is staked by surveyors. Once the limits of the construction area have been identified, the clearing operation can begin. Following clearing, the right-of-way is graded and the pipe ditch is dug. Pipe is strung along the edge of the ditch and welded. Once the pipe is welded into sections, it is lowered into the ditch. The ditch is then backfilled and restoration begins. The pipe is tested, typically using water to a pressure higher than it will be subjected to when operating. Final restoration work follows once the pipe has been successfully tested.

21.    As demonstrated above, there are a myriad of issues and factors that must be accounted for and complicate any pipeline construction project, let alone the instant 182 mile pipeline that must cross almost 1,500 parcels. It is for this reason, that the proposed schedules applicable to the Breakaway Property could change and, by necessity, Millennium seeks to exercise its temporary easement rights at every property for several years through the completion of Project construction. In this regard, one property owner, like Breakaway, cannot be permitted to "hold up" the entire process or make it less efficient by denying access to its land, which could adversely affect the entire Project. With all due respect to Breakaway and its subdivision development plans, such plans cannot be permitted to stand in the way of or otherwise adversely impact the Project.

22.    Moreover, the extent to which Breakaway is impacted by the Project is wholly irrelevant because Breakaway will be fully protected by the amount of security this Court orders Millennium to post, and, ultimately, by the compensation this Court may ultimately order. Accordingly, Breakaway has no grounds to object to the Project or its timing.

23.    With respect to issues of negotiation and valuation, Millennium previously valued the damages to the Breakaway Property in the amount of $13,000, based on the Breakaway Property not yet having received approval for its subdivision, because for almost all of the two-plus years that Millennium was negotiating with Breakaway, the subdivision was not approved. Notwithstanding that the Property had not received subdivision approval, and without identifying the amount of prior offers of settlement, Millennium previously made offers to Breakaway to purchase such easement for amounts that were many multiples of the $13,000 appraised value.

24.    Millennium and its counsel did not become aware that Breakaway's proposed subdivision was approval until after Millennium filed this action on July 20, 2007. Accordingly, Millennium has requested that its appraiser re-evaluate the Breakaway Property in light of the subdivision approval. While Millennium's appraiser's work is on-going, he has indicated that his estimate of damages to the Breakaway Property (as a now approved subdivision) may reach $100,000.

25.    It is Breakaway, not Millennium, who has not bargained in good faith. The parties and the Court agreed to adjourn this action from June 27, 2007 to July 13, 2007 to permit Breakaway to retain an appraiser to appraise its Property and for the parties to report back to the Court regarding whether the matter had settled or, if not, the spread between the parties' respective appraised values. However, on July 13, 2007, counsel for Breakaway reported to the Court that Breakaway had yet to even retain an appraiser. Breakaway's failure to hire an

appraiser as of July 13, 2007 is very troubling in light of the fact that Millennium has been seeking to purchase an easement from Breakaway since approximately March 2005, and in light of Magistrate Judge Fox, at the conclusion of this Court's June 27, 2007 proceedings, having scheduled a security hearing for later this month.

26.     Rather than having retained an appraiser, Breakaway's papers speak about the number of homes Breakaway intends to build at its very newly approved subdivision and the costs and profits associated with such homes.  There is no support for any of Breakaway's lofty projections, nor has construction started on any of the homes, nor has Breakaway submitted to the Court or Millennium even a single contract of sale for a lot or home.  Accordingly, it is Breakaway that has failed to  negotiate in good faith and also failed to provide the Court with any meaningful information; such information being limited to best-case projections with no idea of timing or market absorption.

27.     Of course, all of Breakaway's complaints regarding financial distress are red hearings.  As previously shown, under the established statutory scheme that Breakaway's counsel was supposed to explain to Breakaway, in providing it with the "facts of life" [see Transcript of this Court's June 27, 2007 proceedings, p. 10, lines 2-3], Breakaway will have its day in this Court (on July 30, 2007) to establish as high a bond as possible to fully protect itself for the time Millennium requires to enter upon the Breakaway Property to facilitate the Project.

**WHEREFORE,** deponent respectfully prays for this Court to grant an Order authorizing Millennium to enter upon the Breakaway Property immediately upon the Court's determination of the amount of security that Millennium will be required to post in favor of Breakaway and the other Defendants named in the Complaint with an interest in the Breakaway Property; that such determination be made as soon after the conclusion of the security hearing scheduled before the Court for July 30, 2007; that Breakaway's employees, agents, contractors and all other representatives be enjoined from interfering with such entry; and granting to Millennium such other and further relief as the Court deems fair and proper.

DARRYL J. COLOSI
Bar Roll No. DC2929

Subscribed and sworn to before me
this _16th_ day of July, 2007.

Notary Public
MICHELLE A. MICHALSKI
Notary Public State of New York
Qualified in Erie County
My Commission Expires Dec. 7, 2010

BULIB01\706994\1 -

*Rec'd 7/16/07 KDD*

**BARCLAY**

BUFFALO · ROCHESTER · SYRACUSE · ALBANY · NEW YORK

1100 M&T CENTER
3 FOUNTAIN PLAZA
BUFFALO, NEW YORK 14203-1414
T 716.856.5400 · F 716 856.0139

**DARRYL J. COLOSI**
PARTNER

DIRECT DIAL 716.566.1553
DIRECT FAX 716 846.1239
DCOLOSI@HISCOCKBARCLAY.COM

## FACSIMILE COVER SHEET

**Date:** July 16, 2007    **Time:**    **No. of Pages Transmitted:** *27*
(Including this Cover Letter)

| **Name** | **Company / Location** | **Fax Number** | **Phone Number** |
|---|---|---|---|
| Hon. Mark D. Fox | | (914) 390-4129 | (914) 390-4124 |
| Neil Frishberg, Esq. | | (845) 294-7889 | (845) 294-8634 |

**Comments:**

Re:   Millennium Pipeline Company, L.L.C. v. Certain Temporary Easements in 322
Sleepy Valley Road [Breakaway Trails, et. al]
Civil Action No.07-CV-5815 (CM) (MDF)

Pursuant to the Court's directive on July 13, 2007, we are faxing the attached papers to the Court and counsel before 10 a.m. this morning: Reply Affidavit of Millennium's counsel, Darryl J. Colosi and Reply Memorandum of Law, both dated July 16, 2007.

| **Client/Matter Name** | **Client/Matter Number** | **Time Keeper Number** |
|---|---|---|
| Millennium Pipeline Company, L.L.C. | 3024516 | 1238 |

### FEDERAL TAX DISCLOSURE AND CONFIDENTIALITY NOTICE

In accordance with IRS requirements, we inform you that any Federal tax advice contained in this facsimile transmission is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This facsimile transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.

*If you have a problem receiving, or if you do not receive all of the pages noted above*
*please contact Michelle Michalski at (716) 566-1557.*